**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| THE UNION LABOR LIFE INSURANCE COMPANY, a Maryland corporation, on behalf of one or more of its Separate Accounts, | ) ) ) ) | Civil Action No.  25-cv-02042-PAB |
| *Plaintiff*, | ) ) ) | |
| v. | ) ) | |
| STATLER CLEVELAND HOLDING, LLC, | ) ) | |
| *Defendant*. | ) | ELECTRONICALLY FILED |

## ORDER OF COURT APPOINTING RECEIVER

THIS MATTER is before the Court on the Plaintiff's Petition for Appointment of a Receiver (the "***Motion***").  Upon review of the Complaint in Action for Mortgage Foreclosure and Petition for Appointment of a Receiver (collectively the "***Filings***"), and for good cause shown, the Court FINDS as follows:

THE COURT HEREBY FINDS that Plaintiff's Filings demonstrate grounds for appointment of a receiver and that appointment of a receiver is in the best interests of all parties. The Court therefore grants the relief requested in the Filings.

IT IS HEREBY ORDERED that Shannon Valenti and Great Lakes Realty, Inc. (hereinafter, the "***Receiver***"), be and hereby are appointed as the receiver of Defendant's Assets, as defined below, specifically including, but not limited to, the Premises as defined herein and more particularly described as the Property in the Filings.

IT IS FURTHER ORDERED that:

1.     The Receiver take immediate possession of, hold, secure, take charge of, preserve and protect, to the exclusion of all others, the following assets and property of Defendant (collectively

the "***Defendant's Assets***") to the extent necessary to hold, retain, manage, operate, preserve and protect the Premises (as hereinafter defined) and the other Defendant's Assets and to carry out the instructions and terms of this Order:

(a)  Certain land and improvements thereon (collectively, the "***Premises***"), located in the city of Cleveland, County of Cuyahoga and State of Ohio known as BEING part of Sublot Nos. 62 and 63 in John M. Woolsey's Subdivision of part of Original Two Acre Lot Nos. 156, 157, and 158, as shown by the recorded plat in Volume "N" of Deeds, Page 486 of Cuyahoga County Records, BEING FURTHER known as the Apartment Parcel in the Plat of Consolidation of Statler Arms, Inc., as shown by the recorded plat in Volume 301 of Maps, Page 78 of Cuyahoga County Records, and TOGETHER with certain Appurtenant Rights and License Agreements, as more fully described on **Exhibit A** attached hereto and incorporated herein by reference; and

(b)  All documents, instruments, agreements, information and materials (collectively, the "***Project Records***") relating to the ownership, maintenance, repair, replacement, improvement, management, leasing, insuring, tax appeal (if applicable), marketing, financing, using, operation, preservation and protection of the Premises, including, without limitation, all Project Documents, all Project Accounts, and all Project Income.

In addition to the terms defined in this Order, the terms defined on **Exhibit B** attached hereto are incorporated herein by this reference.

2.  Defendant, its agents, employees, members, managers, officers and representatives, and any and all other contractors, persons and entities retained, hired or engaged by Defendant (collectively, the "***Defendant Parties***") are hereby ordered (a) to immediately surrender possession and control of the Premises to the Receiver; and (b) to immediately surrender possession and control of all other Defendant's Assets in its possession or control, specifically including, without

limitation, all Project Records, Project Accounts, Project Income, Project Deposits, the originals of all Leases, the originals of all other contracts and agreements relating to the Premises, to the Receiver, and copies of all communication relating to such Leases, contracts and agreements, including any pending Leases, contracts and agreements. Receiver shall terminate any and all employees of the Premises and such termination shall be in compliance with any applicable laws (including WARN Act and similar). The Receiver is hereby authorized and directed to take possession of and hold, retain, preserve, protect, use, operate, maintain and manage the Premises and all of the other Defendant's Assets, to receive all Project Income and Project Deposits, and to execute any documents, instruments and agreements to allow the Receiver to take possession of and control and to draw checks on any and all checking, savings and depository accounts and other Project Accounts, as they relate to the Premises, including, but not limited to, any payroll accounts, vendor accounts, petty cash accounts and accounts regarding Project Deposits. Defendant shall submit to Receiver a list of any and all bank accounts that are Project Accounts, including the name or names of the institutions in which the accounts are located, any and all account numbers, access codes and login information for each account. All documents shall be submitted to the Receiver within three (3) business days after the date of this Order. Any future income shall be turned over to Receiver immediately upon receipt. Any Project Deposits which Tenants have paid to Defendant or its agents and which are not paid to the Receiver, and over which the Receiver has no control, shall be obligations of the Defendant and may not be refunded by the Receiver without Plaintiff's approval or an order of this Court. Any other security or other deposits that Tenants have actually paid to the Receiver and which are refundable under the terms of their Leases shall be refundable by the Receiver in accordance with the applicable Leases.

All funds in any account maintained by the Receiver pursuant to this Order shall remain collateral for the Project Loan in accordance with the terms of the Project Loan Documents and shall be paid to Plaintiff upon the earliest to occur of (i) the consummation of the judicial or non-judicial foreclosure and sale of the Premises; (ii) a final Order of this Court is entered terminating the receivership created by this Order; (iii) the consummation of a sale of all or any portion of the Defendant's Assets pursuant to paragraph 12 of this Order; or (iv) further order of this Court. Receiver is hereby authorized, directed and shall instruct any financial institution with accounts maintained by the Defendant Parties to pay over, remit and disburse all funds in such accounts to the Receiver, or as directed by the Receiver, in accordance with this Order.

The Receiver is authorized to serve this Order on any of the financial institutions that maintain any of Defendant's bank accounts (or its agents related to the management and operation of the Premises), and any such financial institution and any other persons in active concert or participation with Defendant shall take such steps as is necessary to restrain or prevent Defendant from withdrawing, disbursing, distributing or causing the diversion of any funds, cash, income, deposits in any of Defendant's bank accounts and shall immediately turnover all funds of Defendant in Defendant's bank accounts to the Receiver.  Any financial institution maintaining Defendant's bank accounts shall provide to the Receiver a complete listing of account numbers under the name of Defendant, including accounts previously closed.  For each such account the financial institution shall provide the current balance for each account and upon request by the Receiver shall provide monthly bank statements (and details of any such transactions as requested) for a period of up to one year prior to entry of this Order.

Each utility company or entity providing service to the Premises, including without limitation, electricity, gas, water, sewage, garbage, television/cable and telephone, shall forthwith

-4-

transfer any deposits which it holds in connection with the Premises to the exclusive control of Receiver and shall be prohibited from demanding that Defendant name Receiver as an authorized user, that Receiver deposit additional funds in advance or that Receiver satisfy obligations incurred prior to the date of this Order to maintain or secure such service. The Receiver is authorized to open new customer accounts with each utility that provides services to the Premises. The Receiver may establish and maintain such utility accounts with the federal employer identification number of the Defendant. No utility company or entity shall be allowed to transfer to the Receiver nor demand from Receiver any outstanding amount due from other receiverships or property managed by or associated with Receiver or any affiliated entity.

Receiver is authorized to open any mail related to the Premises and to issue demands in the name of the receivership estate upon the U.S. Postal Service, or any other public or private entity, to gain exclusive possession and control of such postal boxes as may have been used by Defendant and/or its agents, successors, assigns, and managing members for the receipt of rent, income, and other mail related to the Premises.

3.      Defendant and its agents charged with operating and/or managing the Premises are hereby directed to render to the Receiver and Plaintiff within five (5) business days after the date of this Order: (a) for the period beginning from and after July 15, 2022, to the date of this Order, an accounting of all Project Income, all Project Expenses, whether paid with Project Income or by Defendant for the benefit of the Premises, all Project Accounts and all Project Deposits (including, without limitation, income and expense statements,  quarter end balance sheets and rent rolls for the period from July 15, 2022 through the date of this Order, receivables ledger, security deposit ledge, tenant ledgers for each Tenant, and the most-current Tenant expense reconciliation report); and (b) monthly operating statements prepared for each calendar month starting with January 2024

through and including April, 2026 each of which shall include an itemization of actual (not pro forma) capital expenditures during the applicable period and each of which shall also be certified true and correct by the Defendant, and tax returns filed by Statler Cleveland Holding, LLC, for 2022, 2023, and 2024 when available, including a schedule of K1s and any distributions. Additionally, Defendant and its agents charged with operating and/or managing the Premises are hereby directed to render to the Receiver and Plaintiff promptly, but in any event within one (1) day after the date of this Order, an itemization of all unpaid bills and other amounts due and payable relating to the Premises, together with all bills, invoices, judgments and other writings evidencing or relating thereto, which unpaid bills, invoices, judgments and other amounts due shall remain the sole obligation and responsibility of Defendant and/or Defendant's management company.

4.      The Receiver is authorized and directed to demand, collect and receive from all Tenants under current Leases, and all other person or persons liable therefore, all rents and other amounts and consideration now due and unpaid thereunder or hereafter to become fixed or due thereunder.

5.      The Receiver is hereby authorized to make, cancel, enforce, or modify contracts, leases, or licenses as they relate to the Premises.

6.      The Receiver is authorized and directed (a) to deposit or cause to be deposited all Project Income and all other funds and monies received by it pursuant to this Order in a segregated account at a nationally or state chartered bank of Receiver's choosing, in its name as Receiver and referencing the instant case; (b) to make available by electronic means or by means as otherwise determined by the Receiver and as allowed under this Order copies of the monthly bank statements relating to such accounts for the parties' review and inspection; and (c) to make use of the

Defendant's federal employer tax identification number or IRS Form W-9 in connection with the administration of the Defendant's Assets.

7.      Notwithstanding anything set forth in the Project Loan Documents to the contrary, and without further Order of Court, unless expressly required herein, the Receiver is authorized and directed to use the Project Income and all other funds and monies coming into its hands pursuant to this Order (other than Project Deposits) as follows:

(a)      first, to the Receiver toward payment of the Receiver's compensation as set forth on **Exhibit C** attached hereto and incorporated herein.

(b)      second, to the reasonable costs and expenses incurred by the Receiver in the performance of its duties in accordance with this Order;

(c)      third, to the payment of all monthly Project Expenses arising from and after the date of this Order reasonably necessary to hold, retain, manage, lease, operate, use, preserve and protect the Defendant's Assets in accordance with this Order, provided, however, except as otherwise contemplated by the Budget, that the Receiver shall not expend in excess of $10,000.00 for any single repair, replacement or capital improvement without the prior written approval of Plaintiff, which may be provided by email correspondence, or further authorization by this Court (provided, however, that if Receiver provides written notice to Plaintiff and Plaintiff does not disapprove of such request within forty-eight (48) hours, such request shall be deemed approved, and further provided Receiver may expend in excess of $10,000.00 for emergency expenditures without Plaintiff's or Court's approval, provided further that Receiver shall give Plaintiff prompt notice of any expenditure described in this paragraph completed without Plaintiff's prior written approval; and

(d)     fourth, to a reserve to be held by Receiver (the "**Receiver's Reserve**") for performance of its duties in accordance with this Order, in such amount so that the amount on deposit in the Receiver's Reserve is not less than $25,000.00, provided that no deposit to the Receiver's Reserve shall be made pursuant to this Section 7 if the amount on deposit exceeds $25,000.00.

(e)     last, all remaining Project Income, funds and monies (collectively, "*Excess Funds*") to Plaintiff, with such Excess Funds to be applied by Plaintiff in such order and manner as is authorized under the Project Loan Documents.

8.     If the Receiver (i) determines at any time, and from time to time, that the amount of Project Income then in the possession of the Receiver, or which the Receiver anticipates will be in the possession of the Receiver when required, is insufficient to pay any expenses described in paragraphs 7(a) through 7(c) of this Order, or (ii) receives bills for Project Expenses pertaining to periods that precede the date of this Order, then the Receiver shall promptly notify Plaintiff thereof and of the amount of such deficit or such bills, whereupon Plaintiff shall have the right, but not the obligation, to advance to the Receiver funds to pay all or any portion of such deficit or such bills, and: (a) any such funds advanced by Plaintiff shall be deemed an advance to Defendant under the Project Loan Documents for the protection and preservation of the Premises, shall be added to the outstanding principal amount of the Project Loan and shall be secured by the security title, security interest, lien and encumbrance of the Mortgage and the Project Loan Documents; (b) no such amount advanced by Plaintiff shall render or shall be deemed to render Plaintiff a mortgagee in possession of the Premises or otherwise subject Plaintiff to any liability to Defendant under the Project Loan Documents or otherwise; and (c) the Receiver may also issue to Plaintiff Receiver's certificates of indebtedness to evidence such advances. The Receiver shall not be required to pay

bills, invoices, costs, expenses, judgments, or other amounts pertaining to periods that precede the date of this Order, which bills, invoices, costs, expenses, judgments, or other amounts pertaining to periods that precede the date of this Order shall remain the sole obligation and responsibility of Defendant and/or Defendant's management company.

9. The Receiver is authorized to institute, carry on and maintain all actions, suits, proceedings and procedures necessary (a) for the proper management, operation, preservation and protection of the Premises and the other Defendant's Assets or to gain or recover possession of all or any part thereof; (b) for collection of any Project Income now due or hereafter to become due or fixed; and (c) for the removal of any Tenant or other person unlawfully possessing, occupying or using any part of the Premises.

10. On or before the forty-fifth (45th) day after the entry of this Order by this Court, unless extended by written agreement between the Receiver and Plaintiff, the Receiver shall furnish to Plaintiff a detailed, projected, monthly operating budget for the Receiver and the Premises (as may be amended from time to time, the "***Receiver's Budget***"), which shall be subject to the written approval of Plaintiff. Plaintiff shall advise the Receiver in writing within ten (10) business days of receipt of the Receiver's Budget, or any amendment thereof, whether Plaintiff approves or disapproves the Receiver's Budget, or any amendment thereof.

11. On or before the thirtieth (30th) day of each calendar month, the Receiver shall provide to Plaintiff, Defendant and any other identifiable lienholders, by electronic means or by means otherwise determined by the Receiver and as allowed under this Order, monthly financial reports for the immediately preceding month concerning the operations, income and expenses of the Premises. Plaintiff's mailing information is as follows: The Union Labor Life Insurance Company ("**Lender**"), having an address at 8403 Colesville Road, Silver Spring, Maryland 20910, Attn:

Herbert A. Kolben, with electronic copies as follows: Nadine Lindsay, nlindsay@ullico.com. Defendant's mailing information is as follows: Statler Cleveland Holding, LLC, 127 Public Square, 4000 Key Tower, Cleveland, Ohio 44114, Attn: Frank T. Sinito.

12.     Appropriate circumstances exist to authorize the Receiver to sell all or any portion of the Premises or the other Defendant's Assets without the necessity of this Court conducting a trial. Therefore, upon request by Plaintiff, the Receiver is authorized to (a) list or otherwise advertise all or any portion of the Defendant's Assets for sale or lease with a brokerage firm  selected by Receiver and subject to Plaintiff's approval, on terms and conditions, including brokerage compensation and fees, approved by Plaintiff, (b) solicit offers to purchase all or any portion of the Defendant's Assets, and (c) provide promptly to Plaintiff and Defendant copies of all such offers.  Plaintiff shall be permitted, from time to time, to contact such brokerage firm and any party or parties which may have an interest in purchasing all or any portion of the Defendant's Assets or which have made any proposal to purchase all or any portion of the Defendant's Assets and to discuss and negotiate the terms of such offer provided that Plaintiff shall report the nature and content of such discussions and negotiations to the Receiver periodically, and no such contact, discussion or negotiation with such party or parties shall render or cause or shall be deemed to render or cause Plaintiff to be a mortgagee in possession of the Premises or the Defendant's Assets or otherwise subject Plaintiff to any liability under the Project Loan Documents or otherwise.

13.     The Receiver is hereby authorized and directed, to sell or execute contracts to sell the Premises or any other portion of the Defendant's Assets on such terms as the Receiver deems beneficial and are acceptable and approved in writing prior to such sale by Plaintiff and pursuant to such procedures as may be required by this Court and additional authority such as 28 U.S.C. §§ 2001 and 2004, by way of public or private sale or other disposition free and clear of all security

interests, liens, claims and other interests with all valid security interests and liens to attach to the proceeds of such sale(s), and to execute any documentation on behalf of Defendant as its attorney-in-fact to effectuate such sale(s). Upon request by Plaintiff or Receiver, Defendant shall execute a consent order consenting to the confirmation of such sale by this Court.

14.     In connection with any sale of the Premises or the other Defendant's Assets by the Receiver in accordance with this Order, Plaintiff shall have the right, but not the obligation, in its sole discretion, to permit a purchaser of the Premises or the other Defendant's Assets to assume the Project Loan and to make any modifications to the Project Loan to which Plaintiff agrees (including, without limitation, the extension of the Project Loan maturity date, a change in the interest rate, a reduction of the outstanding principal balance of the Project Loan and changes to the reserves and escrows for the Project Loan).  The Receiver is hereby authorized and directed, without further order of this Court, to execute any documentation on behalf of Defendant as its attorney-in-fact to effectuate such assumption and modification of the Project Loan.

15.     Subject to the terms of this Order, the Receiver is authorized to employ such independent legal counsel to represent Receiver generally in the receivership, including without limitation, in dealing with tenants, in reporting to and appearing before this Court, administration of Defendant's Assets, and as necessary in dealing with the parties to the action,  and subject to Plaintiff's prior written approval, engage a property manager, leasing agent, site maintenance/day porters, consultants, designers, , employees, guards, clerks, and accountants to assist in the administration of Defendant's Assets and all such engagements shall be on commercially reasonable terms. The fees and expenses of such legal counsel, property manager, leasing agent, site maintenance/day porters, consultants, designers, attorneys, employees, guards, clerks, and accountants shall be deemed Project Expenses, to the extent not already included in the Receiver's compensation.

16.     Defendant (a) shall cause all insurance policies currently insuring or otherwise relating to the Premises and/or to the ownership, maintenance, repair, improvement, management, leasing, use, preservation or protection of the Premises or to Defendant's interest in the Premises to be endorsed to name the Receiver, Martin Perry, Principal of Michael Ella R.E.S. Inc., and each of their agents, employees, property managers, and contractors as additional insureds or as a loss payees (as applicable) thereunder, all as their respective interests may appear; and (b) shall promptly deliver to the Receiver and Plaintiff all communications received by Defendant from the issuer of any such insurance policies. The Receiver is authorized to obtain from Defendant's insurance carrier the industry standard insurance protections afforded property managers of similarly situated properties, including but not limited to, being named as an additional insured, or, alternatively, a real estate manager and insured by definition, on Defendant's liability policies related to the Premises and receiving from Defendant's liability insurance policies, property insurance policies and business interruption or rent loss insurance policies with appropriate waiver of subrogation clauses pursuant to which Defendant's insurance carriers would waive all rights of subrogation against the Receiver with respect to losses payable under such policies. The Receiver is authorized and directed to maintain in full force and effect all such insurance policies and, if and when necessary upon expiration or termination of such currently existing policies, to procure and pay the premiums for comparable insurance policies relating to the Premises with such types of coverages, in such amounts and issued by such companies as are specified in the Project Loan Documents, or otherwise as may be approved by Plaintiff.  The Defendant and its agents are prohibited from canceling, reducing or modifying any and all insurance coverage in existence with respect to the Premises that are in effect as of the date of this Order without the consent of the Receiver.

17.     The Receiver is authorized to execute any documents, instruments, contracts, purchase orders and agreements from time to time necessary to permit the Receiver to obtain possession of and to control, use, operate, maintain, improve, manage, lease, insure, market, preserve and protect the Premises and the other Defendant's Assets and otherwise to carry out the Receiver's obligations under this Order.

18.     In holding, retaining, managing, operating, preserving and protecting the Defendant's Assets, the Receiver shall not be bound by or otherwise subject to any existing management agreement, any real estate listing, brokerage, sales or leasing agreement or any other obligation, contract or agreement, other than the Leases, existing as of the date of this Order which relates to the ownership, use, leasing, management, maintenance, repair, preservation or operation of the Premises and the other Defendant's Assets.

19.     During the pendency of this action, the Defendant Parties and all persons acting in concert with any of the foregoing are hereby enjoined and restrained: (a) from collecting any Project Income; (b) from taking possession of any part of the Premises or any of the other Defendant's Assets; (c) from entering into any Lease or renewing, extending, modifying, amending in any way or terminating any Lease; and (d) from hindering or interfering with in any way the performance of the Receiver's obligations, duties and instructions hereunder or with the Premises or any of the other Defendant's Assets or the Receiver's possession and control thereof.

20.     The Defendant Parties, and all persons and entities acting in concert with any of them  (a) shall promptly deliver to the Receiver any and all mail, notices and other written communications and shall promptly notify the Receiver of any oral notices or communications in  any way relating to the Premises or the other Defendant's Assets which are received by such party on and after the date of this Order; and (b) shall cooperate, in good faith and with due diligence, with the Receiver

-13-

in, among other things, transferring utilities and other services provided to the Premises out of the Defendant's name and into that of the Receiver, and carrying out such other terms and purposes of this Order, and if and when requested by the Receiver, shall acknowledge and confirm to persons or entities designated by the Receiver the authority of the Receiver under this Order to take possession of, hold, secure, take charge of, manage, lease, operate, preserve and protect the Premises and the other Defendant's Assets, specifically including, without limitation, the Project Income, the Project Accounts and the Project Deposits.

21.     Notwithstanding anything in this Order to the contrary, Plaintiff is hereby permitted to proceed with and exercise any and all available rights and remedies under the Project Loan Documents, including, without limitation, exercising its rights as holder of security title to the Premises and as a secured creditor under the Project Loan Documents, under Article Nine of the Uniform Commercial Code in effect in the applicable jurisdiction or under other applicable law governing such rights, by judicial or non-judicial foreclosure, power of sale or as otherwise provided under the Project Loan Documents, should Plaintiff so elect.  Plaintiff shall notify the Receiver of any such sale or other exercise of its rights and/or remedies, and the Receiver shall cooperate with Plaintiff in the consummation of any such action or actions, including, without limitation, execution of such deeds, bills of sale and other documents, instruments and agreements.

22.     If and when judicial or non-judicial foreclosure proceedings against the entire Premises shall have been consummated,  upon the sale of the entire Premises pursuant to this Order and within thirty (30) days after the consummation of such sale, or as otherwise determined by Receiver or this Court,  Receiver shall file a Notice of Termination and Request for Discharge Order seeking discharge by the Court from its responsibilities as Receiver herein. The Notice of Termination and Request for Discharge Order shall include a final Report, summarizing all of

Receiver's activities, providing a final accounting, and reporting the final disposition and distribution of funds. Upon Order of Court, the Receiver shall thereupon be discharged and relieved from this Order and any obligations thereunder.

23. The Receiver shall permit Plaintiff, and its agents and independent contractors, to inspect the Premises and the Project Documents.

24. The Receiver may obtain, use and operate under any and all leases, licenses, including liquor if any, permits and approvals currently in effect for the Premises.

25. In addition to the powers and instructions expressly set forth in this Order, the Receiver shall have all of the powers of a receiver which are authorized by law to hold, retain, manage, operate, preserve and protect the Premises and the other Defendant's Assets and otherwise to comply with the terms of this Order.

26. As the Receiver has substantial liability insurance with significant policy coverage and the Defendant contractually waived the posting of a Bond in connection with the appointment of a Receivership under the Mortgages in favor of Plaintiff, the Court, in its discretion, determines that a bond is not necessary and the Receiver is not required to post a bond.

27. The Receiver, its affiliates and their respective employees, affiliates, agents, and attorneys shall have no personal liability in connection with any liabilities, obligations, liens, or amounts owed to any of Defendant's creditors because of its duties as Receiver, except in a case where the Receiver has acted outside the scope of the receivership authority, or committed fraud, intentional misconduct or intentionally misrepresented the Receiver's ministerial authority as the Receiver, or acted negligently. Receiver shall not be responsible for payment of any costs, fees, charges, or expenses incurred with regard to the Defendant's Assets prior to Receiver taking possession of Defendant's Assets, including the Premises, including (i) any claims or liabilities in any

way related to an employee's employment with or separation from Defendant or any related management company for the Premises and (ii) any compensation, benefits, payroll taxes, workers compensation insurance, severance liabilities, contractual obligations, benefit plans or liabilities related to the WARN ACT or similar state or municipal statutes, ordinances, or regulations. Receiver shall not be required to use any bank account amounts, revenues, profits, or monies collected by Receiver for payment of any of the foregoing costs, fees, charges, and expenses.

28.     No person or entity shall file suit against the Receiver, or take other action against the Receiver, without an order of this Court permitting the suit or action; provided, however, that no prior court order is required for one of the parties to the foreclosure action to file a motion in this foreclosure action to enforce the provisions of this Order or any other order of this Court in this action.

29.     Receiver shall not have any obligation for filing tax returns for Defendant. However, upon written request, the Receiver shall provide Defendant with information in the Receiver's possession necessary for the Defendant to complete its tax returns related to the operation of the Premises.

30.     If Defendant files a bankruptcy case during the receivership, upon Plaintiff's knowledge thereof, Plaintiff shall give notice of the bankruptcy case to the Court and to Receiver. If Receiver receives notice that the bankruptcy has been filed and that part of the bankruptcy estate includes the Premises or Defendant's Assets (or any part thereof), Receiver shall have the following duties:

      a.     Receiver shall immediately contact Plaintiff and determine whether Plaintiff intends to move in the bankruptcy court for an order for: (i) relief from the

automatic stay; and (ii) relief from Receiver's obligation to turn over the Premises (11 U.S.C. § 543). If Plaintiff disclaims in writing any intention to make such a motion or fails to file such motion within ten court days following its receipt of notice of the bankruptcy filing, Receiver shall immediately turn over the Premises (or applicable portion thereof) to the appropriate entity (either to the trustee in bankruptcy if one has been appointed or, if not, to the debtor in possession) and otherwise comply with 11 U.S.C. § 543.

b.    If Plaintiff intends to seek relief immediately from both the automatic stay and Receiver's obligation to turn over the Premises, Receiver may remain in possession and preserve the Premises pending the ruling on those motions unless otherwise ordered by the Bankruptcy Court. (11 U.S.C. § 543(a).) Receiver's authority to preserve the Premises shall be limited as follows: (i) Receiver may continue to collect rents, profits, and other income; (ii) Receiver may make only those disbursements necessary to preserve and protect the Premises; (iii) Receiver shall not execute any long-term contracts without the approval of this Court and the Bankruptcy Court; and (iv) Receiver shall do nothing that would effect a material change in the circumstances of the Premises.

35.    Receiver may retain legal counsel to assist Receiver with issues arising out of the bankruptcy proceedings that affect the receivership estate.

**IT IS FURTHER ORDERED**, that any debts and liabilities incurred by the Receiver in the course of its operation and management, provided such operation and management was done in accordance with the terms of this Order, of Defendant's Assets, whether in the Receiver's name

-18-

or otherwise, shall be the debts and obligations of the receivership estate only, and not of the Receiver in its proprietary capacity; and

**IT IS FURTHER ORDERED**, that the Defendant Parties and all persons and entities acting in concert with any of them:  (a) shall not take any action inconsistent with the terms of this Order; (b) shall not interfere with the Receiver exercising its powers and performing its duties pursuant to this Order; (c) shall not remove, destroy, conceal or alter any of the Defendant's Assets, specifically including, without limitation, the Project Records; and (d) shall not take any action with respect to the control, use, management, preservation, repair, maintenance, leasing, sale or operation of the Premises and the other Defendant's Assets, except as otherwise permitted under this Order or upon the specific request of the Receiver.

This \_\_\_\_\_ day of _____, 2026.

_____

Judge, _____

-19-

Prepared by:


Counsel of Record for Plaintiff:

*/s/ Jason M. Yarbrough*

Jason M. Yarbrough, Esquire
Oh. I.D. #96217
jmy@muslaw.com

Robert E. Dauer, Jr., Esquire
*Pro Hac Vice*
Pa. I.D. #61699
red@muslaw.com

MEYER, UNKOVIC & SCOTT LLP
Firm #199
Henry W. Oliver Building
535 Smithfield Street, Suite 1300
Pittsburgh, PA  15222-2315

(412) 456-2800

**Exhibit A**

Legal Description

(see attached)

EXHIBIT "A"

LEGAL DESCRIPTION

Property 1:
Parcel No. 1: (Fee Simple)

Situated in the City of Cleveland, County of Cuyahoga and State of Ohio:

And known as being part of Sublot Nos. 62 and 63 in John M. Woolsey's Subdivision of part of Original Two Acre Lot Nos. 156, 157 and 158, as shown by the recorded plat in Volume "N" of Deeds, Page 486 of Cuyahoga County Records, bounded and described as follows:

Beginning on the northerly line of Euclid Avenue (99.00 feet wide) at its intersection with the westerly line of East 12th Street (formerly Muirson Street) (60.40 feet wide);

Thence South 79° 35' 51" west along said northerly line of Euclid Avenue 168.82 feet to the southeasterly corner of land conveyed to the Trebmal Construction Co. by deed recorded in Volume 83-0853, Page 17 of Cuyahoga County Records;

Thence North 10° 35' 39" west along the easterly line of land so conveyed to the Trebmal Construction Co. and the northerly prolongation thereof, 150.00 feet to a point;

Thence North 79° 35' 42" east 64.80 feet to a point on the westerly line of land conveyed to The Cleveland Trust Company by deed dated May 31, 1927 and recorded in Volume 3567, Page 349 of Cuyahoga County Records;

Thence North 10° 36' 09" west along said line, 169.58 feet to a point in the southeasterly line of Hickory Court, N.E. (15.12 feet wide);

Thence North 55° 48' 21" east along the southeasterly line of Hickory Court, N.E., 113.48 feet to a point in the westerly line of aforementioned East 12th Street;

Thence South 10° 36' 09" east along the westerly line of said East 12th Street, 365.36 feet to the point of beginning and containing 1.0408 acres of land as calculated and described by The North Coast Engineering and Surveying Co., Inc., in November of 1998, be the same more or less, but subject to all legal highways.

NOTE: The above premises is further known as the Apartment Parcel in the Plat of Consolidation of Statler Arms, Inc. as shown by the recorded plat in Volume 301 of Maps, Page 78 of Cuyahoga County Records.

1

Parcel No. 2: Appurtenant Rights

A.     Together with a nonexclusive perpetual easement for the use of the elevator and stairwell in the garage; a nonexclusive perpetual easement for access to and the use of all underground facilities serving the building located on the apartment parcel including without limitation all utility lines, pipes, ducts, equipment and facilities located on, under or over the garage parcel; a nonexclusive perpetual easement for the use of the access and service drive which extends from Hickory Court through the rear portion of the garage; a nonexclusive and perpetual easement to perform all necessary maintenance to the apartment building wall and to make penetrations into and through the garage wall for the purpose of allowing direct access from the apartment building to each floor of the garage and a nonexclusive perpetual easement to the use of the air rights above the top level of the garage for the purpose of maintaining and repairing the portions of the wall of the apartment building which extend above the top level of the garage all as reserved in the Warranty Deed from Statler Arms, Inc., an Ohio corporation to Statler Arms Garage, Inc., an Ohio corporation, dated April 27, 1999, filed for record September 21, 1999, and being Cuyahoga County Recorder's AFN 199909210866.

B.     Together with a License Agreement for Use of Ballroom by and between Statler Arms Garage, Inc., an Ohio corporation ("Original Licensor"), and Statler Arms, Inc., an Ohio corporation ("Original Licensee"), dated August 13, 1999, filed for record September 21, 1999, and being Cuyahoga County Recorder's AFN 199909210869;  as assigned by Original Licensee to PAMI Statler Arms, LLC, a Delaware limited liability company ("PAMI"), by Assignment and Assumption of License Agreements, dated May 8, 2006, filed for record May 10, 2006, and being Cuyahoga County Recorder's AFN 200605100708; as modified by Amendment of License Agreement and Stipulation Settlement, dated September 23, 2008, filed for record June 3, 2011 as Instrument No. 201106030167 of Cuyahoga County, Ohio records; as assigned by PAMI to Statler Arms L/CAL LLC, a Delaware limited liability company ("L/CAL"), by unrecorded Assignment and Assumption of License Agreements, dated May 23, 2012; as consented to by HH Cleveland Statler L.P., an Ohio limited partnership ("Licensor"), successor in interest to Original Licensor, by Consent to Assignment and Assumption of License Agreements, dated December 16, 2016, filed for record December 28, 2016 as Instrument No. 201612280380 of Cuyahoga County, Ohio records; as consented to by Licensor, by unrecorded Consent to Assignment and Assumption of License Agreements, dated November 29, 2017; as assigned by L/CAL to Statler Cleveland Holding, LLC, a Delaware limited liability company ("Licensee"), by Assignment and Assumption of License Agreements dated January 30, 2018 and filed in Cuyahoga County, Ohio records as Instrument No. 201801300501.

C.     Together with a License Agreement for Use of Parking Spaces in Garage by and between Statler Arms Garage, Inc., an Ohio corporation ("Original Licensor"), and Statler Arms, Inc., an Ohio corporation ("Original Licensee"), dated August 13, 1999, filed for record September 21,

2

1999, and being Cuyahoga County Recorder's AFN 199909210870, as assigned by Original Licensee to PAMI Statler Arms, LLC, a Delaware limited liability company ("PAMI"), by Assignment and Assumption of License Agreements, dated May 8, 2006, filed for record May 10, 2006, and being Cuyahoga County Recorder's AFN 200605100708; as modified by Amendment of License Agreement and Stipulation Settlement, dated September 23, 2008, filed for record June 3, 2011 as Instrument No. 201106030167 of Cuyahoga County, Ohio records; as assigned by PAMI to Statler Arms L/CAL LLC, a Delaware limited liability company ("L/CAL"), by unrecorded Assignment and Assumption of License Agreements, dated May 23, 2012; as consented to by HH Cleveland Statler L.P., an Ohio limited partnership ("Licensor"), successor in interest to Original Licensor, by Consent to Assignment and Assumption of License Agreements, dated December 16, 2016, filed for record December 28, 2016 as Instrument No. 201612280380 of Cuyahoga County, Ohio records; as consented to by Licensor, by unrecorded Consent to Assignment and Assumption of License Agreements, dated November 29, 2017; as assigned by L/CAL to Statler Cleveland Holding, LLC, a Delaware limited liability company ("Licensee"), by Assignment and Assumption of License Agreements dated January 30, 2018 and filed in Cuyahoga County, Ohio records as Instrument No. 201801300501.

D.    Together with the right to construct a hoist as set forth in City of Cleveland Ordinance No. 107802.

3

## **Exhibit B**

### Certain Defined Terms

As used in the Order to which this **Exhibit B** is attached, the following terms shall have the meanings ascribed thereto as set forth below:

"*Budget*" means, prior to the approval of the Receiver's Budget pursuant to the terms of the Order, and after approval of the Receiver's Budget pursuant to the terms of the Order, the Receiver's Budget.

"*Lease*" means any lease, sublease, license, franchise, occupancy agreement and any other agreement, together with all modifications and amendments thereto, which relate to the use or occupancy of any part of the Premises.

"*Mortgage*" means that certain Open-End Mortgage, Security Agreement and Fixture Filing dated July 15, 2022, and recorded on July 18, 2022, in the Cuyahoga County Office of Fiscal Officers at Instrument No. 202207180578

"*Project Accounts*" means collectively all checking, savings and depository accounts, all payroll, vendor, petty cash and security deposit accounts and all other accounts containing or evidencing any Project Income, defined below.

"*Project Deposits*" means all security and utility, prepayments and other deposits received by Defendant and its agents under any Lease (from Tenants under current Leases and from Tenants whose leases have expired or otherwise terminated, but whose security and similar deposits have not been returned or refunded to such Tenants) or any other agreement relating to the ownership, operation, maintenance, repair, restoration or use of the Premises, and all deposits made by Defendant to any utility or other service provider, contractor, vendor, lessor or other person or entity in connection with any labor, services, material or other items or property relating to the Premises.

"*Project Documents*" is defined to the broadest extent permitted under Ohio law and specifically includes, without limitation: the originals of all books, records, statements, checkbooks, check registers, cancelled checks, bank and other statements, worksheets, spread sheets, memoranda, statements of account, receipts, files and other financial information; the originals of all leases, subleases, rental agreements, occupancy agreements, license agreements

1

and other agreements relating to the rental, occupancy, licensing and/or use of the Premises, together with all files, correspondence and communications with all past, current and prospective lessees, tenants, occupants, licensees and/or users of the Premises and their agents and representatives; the originals of all marketing, advertising, listing and promotional materials; all key (including all masters), alarm codes, access devices and access codes, social medial account information and administrator access, website administrator access and a list of persons possessing any of the foregoing; all telephone, facsimile, e-mail and post office box numbers and addresses, the originals of all listing and commission contracts, agreements and commitments, together with all files, correspondence and communications with all brokers and their agents and representatives; the originals of all pictures, plans, specifications, drawings and other depictions and descriptions of the Premises; the originals of all permits, licenses, authorizations and other approvals; the originals of all contracts, agreements, purchase orders, invoices, bills, receipts, account statements, files, correspondence and communications with all utility companies, service providers, contractors, subcontractors, vendors, vendees, governmental authorities, adjacent land owners and other third parties in any way relating to ownership, repair, maintenance, improvement, management, leasing, operation, use, operation, preservation and/or protection of the Premises; the originals of all insurance policies and of all files, correspondence and communications with all insurance companies and their respective agents, brokers and representatives; copies of all local, state and federal tax returns for Defendant and for the Premises; the originals of all employee contracts and agreements and of all correspondence and communications with employees of Defendant, all employer and employee files, all payroll and employee records and copies of all local, state and federal employer and employee reports, tax deposits and returns; the originals of all notices, protests, objections, claims, demands, suits, complaints, petitions, injunctions, restraining orders, pleadings and mediation and arbitration proceedings received, sent or filed by or against the Premises or Defendant which in any way relates to or involves the Defendant's Assets.  Additionally, the term "***Project Documents***" means and includes all such documents, information, instruments and materials, whether in tangible form or in the form of computer or electronically stored or generated images, e-mails or other data, and to the extent any of such documents, information, instruments or materials are computer or electronically stored or generated, Defendant shall provide, or cause to be provided, to the Receiver the original or copies

2

of such computer programs or other computer software as may be necessary or reasonably required by the Receiver to access, read and make tangible copies thereof.

"*Project Expenses*" means all costs, expenses, payments and other monetary obligations and liabilities, specifically including, without limitation, all real and personal property taxes and assessments and all insurance premiums relating to the Premises.

"*Project Income*" means all rents, issues, profits, income and other revenue of whatsoever nature or amount derived from or relating to the Premises, including, without limitation, any prepaid rents and income and any termination fees or payments relating to any Lease or other contract or agreement affecting the Premises and the proceeds from any insurance policy, any condemnation award and from the sale of all or any portion of the Premises.

"*Project Loan*" means that certain loan made in the original principal amount of $52,000,000 made to Defendant on or about July 15, 2022, which is owned and held by Plaintiff and is secured by the Premises, among other things.

"*Project Loan Documents*" means all documents, instruments and agreements evidencing, securing or relating to the Project Loan, specifically including, without limitation, the Loan Documents as defined in the Filings.

"*Tenant*" means any tenant, lessee, subtenant, sublessee, licensee, occupant or other user of all or any part of the Premises under any current or previous Lease.

**Exhibit C**

Receiver's Compensation



## Receivership Fee Terms

**Property:** The Statler Arms

**Address:** 1127 Euclid Ave, Cleveland, OH 44115

**Court / Case No.:** _TBD_____

**Receiver / Manager:** Great Lakes Realty, Inc, DBA GLR Companies

**Effective Date:** _TBD_____

Great Lakes Realty, Inc, DBA GLR Companies . shall charge a receivership management fee equal to $12,500 per month or 4% of gross receipts, whichever is greater, subject to court approval where required. Receiver compensation is commonly paid from the assets or funds of the receivership estate and is often subject to court review and approval.

In addition to the monthly receivership management fee, Great Lakes Realty, Inc, DBA GLR Companies . shall charge a one-time setup fee of $3,000 for initial onboarding and transition of the asset. This setup fee covers software setup, website setup, internet listing services (ILS) setup, domain name procurement or transfer, and related implementation work intended to make the transition as seamless as possible for residents.

A payroll surcharge of 3% shall be charged to the entity on a bi-weekly basis for payroll administration services. Payroll processing fees are generally treated as operating expenses or administrative charges of the entity.

Any attorney fees and legal expenses incurred in connection with the operation, protection, administration, compliance, litigation, or preservation of the asset shall be charged back to the entity or receivership estate, subject to court approval where applicable. Fees and costs of a receiver and the receiver's professionals are generally treated as administrative expenses chargeable against the assets in the receivership estate. These fees include but are not limited to:

- Court filing fees and service costs.
- Outside legal counsel.
- Security services.
- Emergency repairs and board-up.
- Utility deposits or restorations.

-2-

- Postage, copying, mileage, and inspection travel.
- Insurance, permits, and municipal registrations.
- Third-party accounting, environmental, pest, or engineering reports.

## Billing Terms

- Monthly receivership fee: $12,500 or 4% of gross receipts, whichever is greater.

- One-time setup fee to Great Lakes Realty, Inc, DBA GLR Companies .: $3,000.

- Property Management Software (PMS) setup and conversion fees: As billed by PMS

- Payroll surcharge: 3% charged bi-weekly to the entity.

- Attorney fees and legal expenses: billed back to the entity or receivership estate as incurred, subject to court approval where required.

Any additional terms will be detailed in the receiver orders and/or the management agreement.