# EXHIBIT C



CUYAHOGA COUNTY
OFFICE OF FISCAL OFFICERS - 39
MORT 7/18/2022 3:17:15 PM
**202207180578**

Drafted by, and upon recording,
Please return to:

Matthew D. Whitworth, Esquire
Meyer, Unkovic & Scott LLP
535 Smithfield Street, Suite 1300
Pittsburgh, PA 15222

(Space above reserved for recording)

| | |
|---|---|
| Title of Document: | Open-End Mortgage, Security Agreement and Fixture Filing |
| Date: | July 15, 2022 |
| Mortgagor: | **STATLER CLEVELAND HOLDING, LLC**, a Delaware limited liability company |
| Mortgagor Address: | 127 Public Square, 4000 Key Tower<br>Cleveland, Ohio 44114-1309 |
| Mortgagee: | **THE UNION LABOR LIFE INSURANCE COMPANY**, a Maryland corporation on behalf of one or more of its Separate Accounts |
| Mortgagee's Address: | 8403 Colesville Road<br>Silver Spring, Maryland 20910-6331 |
| Legal Description: | See Exhibit "A" Attached hereto and made a part hereof |

The information provided in this cover page shall not be construed as either modifying or supplementing the substantive provisions of the attached Mortgage. In the event of a conflict between the provisions of the Mortgage and the provisions of this cover page, the attached Mortgage shall prevail and control.

i

4859-1371-1395, v. 2

## OPEN-END MORTGAGE, SECURITY AGREEMENT
## AND FIXTURE FILING

THIS OPEN-END MORTGAGE, SECURITY AGREEMENT AND FIXTURE FILING (this "Mortgage") is made as of the 15th day of July, 2022, by **STATLER CLEVELAND HOLDING, LLC**, a Delaware limited liability company (hereinafter referred to as "Mortgagor"), to **THE UNION LABOR LIFE INSURANCE COMPANY**, a Maryland corporation on behalf of one or more of its Separate Accounts, its successors and assigns (hereinafter collectively referred to as "Mortgagee").

## WITNESSETH:

WHEREAS, pursuant to the terms and conditions of that certain Loan Agreement dated as of the date hereof between Mortgagor and Mortgagee (hereinafter referred to as the "Loan Agreement"), Mortgagee has made a loan to Mortgagor in the principal amount of Fifty Two Million and No/100 Dollars ($52,000,000.00), as evidenced by that certain Promissory Note of even date herewith in such amount (the "Note"); and

WHEREAS, simultaneously with the execution and delivery of this Mortgage and the Note, (i) Mortgagor and Frank T. Sinito, an adult individual ("Guarantor"), have executed and delivered to Mortgagee that certain Environmental Indemnification Agreement of even date herewith (the "Indemnity Agreement"), (ii) Guarantor has executed and delivered to Mortgagee that certain Guaranty and Suretyship Agreement of even date herewith (the "Guaranty"), and (iii) Mortgagor has executed and delivered to Mortgagee that certain Assignment of Rents, Leases and Profits of even date herewith (the "Assignment of Leases"); and

WHEREAS, simultaneously with the execution and delivery of the Note, the Loan Agreement, the Indemnity Agreement, the Guaranty and the Assignment of Leases, Mortgagor has entered into this Mortgage with Mortgagee to secure, among other things, the payment of the Note, the obligations and payments of Mortgagor under the Loan Agreement, the Indemnity Agreement and the Assignment of Leases and all of the advances made and which may be made by Mortgagee pursuant to the terms of this Mortgage; and

WHEREAS, terms used herein and not otherwise defined herein shall have the meanings ascribed thereto in the Loan Agreement.

NOW, THEREFORE, the parties hereto agree as follows:

## ARTICLE I
## SECURED OBLIGATIONS

1.1    Security.  This Mortgage is executed and delivered by Mortgagor to secure the payment and performance of certain indebtedness, liabilities and obligations owing and to become owing to or in favor of Mortgagee, as follows:

1.1.1    The outstanding principal balance of the Note, payable to the order of Mortgagee in the principal amount of Fifty Two Million and No/100 Dollars ($52,000,000.00), together with all interest accruing thereon, being payable in the amounts, at the interest rate and on the dates stipulated in the Note and the Loan Agreement;

1.1.2    Any and all other amounts, liabilities, and obligations for which or for the performance of which Mortgagor may become indebted or obligated under the terms of this Mortgage, the Note, the Loan Agreement, the Indemnity Agreement, the Assignment of Leases and any other documents, instruments, recordings or filings that may hereafter be entered into by and between Mortgagor and Mortgagee or may be executed and delivered by Mortgagor on behalf of Mortgagee in connection with the Loan (this Mortgage, the Note, the Loan Agreement, the Indemnity Agreement, the Guaranty, the Assignment of Leases and all such documents, instruments, recordings and filings are herein collectively referred to as the "Loan Documents");

1.1.3    Any and all renewals, increases, rearrangements, modifications, supplements, restatements and extensions of the foregoing items of indebtedness and obligations.

1.2    Secured Obligations.   Each and every item of indebtedness described and included in this Mortgage is intended to be fully secured by the liens, assignments, and security interests created under and by virtue of this Mortgage; and all such items so secured (now or hereafter existing) are hereinafter collectively called the "Secured Obligations."

## ARTICLE II
## GRANT OF MORTGAGED PROPERTY

2.1    Mortgaged Property.  NOW THEREFORE, in consideration of the indebtedness, and as security for the payment and performance of the Secured Obligations, Mortgagor has granted, conveyed, bargained, sold, aliened, enfeoffed, released, confirmed, mortgaged, warranted, and created a security interest in and by these presents does hereby grant, bargain, sell, alien, enfeoff, release, convey and confirm, mortgage and warrant unto Mortgagee, and create a security interest in favor of Mortgagee in and to Mortgagor's fee simple interest in all of the following (collectively, the "Mortgaged Property"), to wit:

2.1.1    All those certain tracts, pieces and parcels of land situate in the City of Cleveland, Cuyahoga County, Ohio, and more particularly described in Exhibit "A" attached hereto and hereby made a part hereof (the "Land") (the State of Ohio is sometimes hereinafter referred to as the "Jurisdiction");

2

4859-1371-1395, v. 2

2.1.2    All structures, improvements, buildings and any additions and alterations thereto or replacements thereof, now or hereafter erected upon the Land (all of the foregoing being collectively referred to as the "Improvements"), and in addition, all of Mortgagor's right, title and interest in and to all equipment, apparatus, furnishings, furniture, machinery, fixtures of every kind and nature whatsoever (the "Personal Property") now or hereafter located in and about said Improvements, including without limitation all fixtures, fittings, appliances, apparatus, equipment, machinery, furnishings and articles of personal property now or hereafter attached or affixed to, placed upon or used in any way in connection with the use, enjoyment, operation or occupancy of the Improvements, including without limitation all landscaping and gardening equipment, all heating and incinerating apparatus and equipment whatsoever, all boilers, engines, motors, dynamos, generating equipment, piping and plumbing fixtures, ranges, cooking utensils and apparatus and mechanical kitchen equipment, refrigerators, cooling, ventilating, sprinkling and vacuum cleaning systems, fire extinguishing and prevention apparatus, gas and electrical fixtures, elevators, escalators, partitions, lockers, cabinets, window covering and all hardware therefor, carpeting and other floor covering, lighting fixtures, lamps and office furniture, window shades, blinds, screens, storm sash, awnings, furnishings of public spaces, halls and lobbies and shrubbery and plants, all of which property mentioned in this paragraph shall be deemed part of the realty mortgaged hereby and not severable wholly or in part without material injury to the freehold (the Land, the Improvements and the Personal Property being collectively referred to herein as the "Premises"); provided, however that the term "Personal Property" shall specifically exclude any personal property owned by tenants of the Mortgaged Property.  Notwithstanding the agreement hereinabove expressed that certain articles of property form a part of the realty covered by this Mortgage and be appropriated to its use and deemed to be realty, to the extent that such agreement and declaration may not be effective and that any of said articles may constitute goods (as said term is used in the Uniform Commercial Code as enacted in the Jurisdiction), this instrument shall constitute a security agreement, creating a security interest in such goods, as collateral, in Mortgagee as a secured party and Mortgagor as debtor, all in accordance with said Uniform Commercial Code, as more particularly set forth in Article III hereof;

2.1.3    All of Mortgagor's estate, of whatever nature, in and to all of the easements, rights, privileges, appurtenances, air rights and development rights now or hereafter belonging or in any wise appertaining to the Premises (the "Appurtenant Rights"), and all of the estate, right, title, interest, claim or demand whatsoever, either in law or in equity, in possession or expectancy of Mortgagor therein and in the streets and ways, open or proposed, adjacent thereto, and in and to all strips and gores, vaults, alleyways, sidewalks and passages used in connection with the Premises;

2.1.4    All working capital and other similar accounts (including without limitation reserves for the replacement of Personal Property), and all inventory accounts, accounts receivable, contract rights, general intangibles, chattel paper, instruments, documents, notes, drafts, letters of credit and insurance policies arising from or related to the Premises (collectively, the "Accounts") and including all replacements and substitutions for, or additions to, all products and proceeds of any of the foregoing;

3

4859-1371-1395, v. 2

2.1.5    All of Mortgagor's interest in all agreements, contracts, certificates, instruments and other documents, now or hereafter entered into, pertaining to the construction, operation or management of the Premises and all right, title and interest of Mortgagor therein;

2.1.6    All unearned premiums accrued or to accrue under all insurance policies for the Premises obtained by Mortgagor, all proceeds of the conversion, voluntary or involuntary, of any of the foregoing into cash or liquidated claims, proceeds of insurance and condemnation awards, and all rights of Mortgagor to refunds of real estate taxes and assessments (the "Proceeds");

2.1.7    All of Mortgagor's right, title and interest in and to all trade names, trademarks and service marks now or hereafter used in connection with the Premises or any part thereof or any other part of the Premises, together with good will appurtenant thereto;

2.1.8    All of Mortgagor's right, title and interest in and to all trade leases, subleases, lettings, licenses and other occupancy agreements, and guarantees thereof, for the Premises or any part thereof (collectively, the "Leases" and, individually, a "Lease"), including any cash or other security deposited thereunder, and the rents, issues, profits, revenue, royalties (collectively, the "Rents") payable under the Leases;

2.1.9    All of Mortgagor's right, title and interest in and to computer software, books, records and files of or relating to the Premises now or hereafter maintained by Mortgagor or for its account, to the extent owned by Mortgagor;

2.1.10   All awards and claims for damages made and to be made for the taking by eminent domain of the whole or any part of the Premises, including without limitation any awards for change of grade of streets, all of which awards Mortgagor hereby assigns to Mortgagee;

2.1.11   All licenses, permits, and warranties attributable or allocable to all or any portion of the Premises, both real and personal; and

2.1.12   All mineral, water, oil and gas rights and privileges and royalties pertaining to the Premises.

TO HAVE AND TO HOLD the Mortgaged Property unto Mortgagee and its substitutes or successors forever, and Mortgagor does hereby bind itself, its successors, assigns, executors and administrators to warrant and forever defend all and singular the Mortgaged Property unto Mortgagee, its successors and assigns, against every person whomsoever lawfully claiming or to claim an interest in the same, or any part thereof. Subject only to (i) the specific matters, if any, set forth in Exhibit "B" attached hereto and hereby made a part hereof and any future matters approved in writing by Mortgagee as Permitted Exceptions (collectively, "Permitted Exceptions"), and (ii) any other future matters expressly permitted hereunder.

4

2.2     Satisfaction of Mortgage. This conveyance, however, is intended as a mortgage and security agreement and is made upon the following terms and conditions, to wit:  In the event Mortgagor shall perform and pay the Secured Obligations (including payment of all principal and interest, and all charges, disbursements and reasonable fees of Mortgagee's attorneys, if any, owing or to become owing thereon) to Mortgagee when the same shall become due, then this Mortgage shall be null and void and shall be satisfied at Mortgagor's sole cost and expense; otherwise this Mortgage shall continue in full force and effect.

ARTICLE III
SECURITY AGREEMENT

3.1     Grant of Security Interest. Without limiting any of the other provisions of this Mortgage, Mortgagor, as Debtor (referred to in this Article III as "Debtor," whether one or more), expressly GRANTS unto Mortgagee, as Secured Party (collectively referred to in this Article III as "Secured Party," whether one or more), a security interest in all the Mortgaged Property (including both those now and those hereafter existing) to the full extent that any portion of the Mortgaged Property may be subject to the Uniform Commercial Code as enacted in the Jurisdiction (hereinafter referred to as the "Uniform Commercial Code").

3.2     Covenants of Debtor. Debtor covenants and agrees with Secured Party that:

3.2.1   In addition to any other remedies granted in this Mortgage to Secured Party (including specifically, but not limited to, the right to proceed against the Mortgaged Property in accordance with the rights and remedies in respect of the Mortgaged Property which are real property pursuant to the Uniform Commercial Code), Secured Party may, should an Event of Default (as defined in Article V hereof) occur and be continuing, proceed under the Uniform Commercial Code as to all or any part of the personal property (tangible or intangible) and fixtures included in the Mortgaged Property (such portion of the Mortgaged Property being referred to in this Article III as the "Collateral"), and shall have and may exercise with respect to the Collateral all the rights, remedies, and powers of a secured party under the Uniform Commercial Code, including without limitation the right and power to sell, at one or more public or private sales, or otherwise dispose of, lease, or utilize the Collateral and any part or parts thereof in any manner authorized or permitted under the Uniform Commercial Code after default by a debtor.  Without limiting the foregoing, Secured Party shall have the right upon any such public sale or sales, and, to the extent permitted by law, upon any such private sale and sales, to purchase the whole or any part of the Collateral so sold, free of any right or equity of redemption in Debtor as permitted under the Uniform Commercial Code.  Debtor further agrees to allow Secured Party to use or occupy the Mortgaged Property, without charge, for the purpose of perfecting any of Secured Party's remedies in respect of the Collateral.  The net proceeds of any such collection, recovery, receipt, appropriation, realization or sale, after deducting all actual reasonable expenses of every kind incurred therein or incidental to the care, safekeeping or otherwise of any or all of the Collateral or in any way relating to the rights of Secured Party hereunder, including all reasonable attorneys' charges, disbursements and reasonable fees, shall be received by Secured Party and credited against the payment in whole or in part of the Secured

5

Obligations. To the extent permitted by applicable law, Debtor waives all claims, damages, and demands against Secured Party arising out of the repossession, retention or sale of the Collateral, except for claims, damages and demands due to the gross negligence or willful misconduct of Secured Party in dealing with such Collateral. To the extent permitted by law, Debtor agrees that Secured Party need not give more than ten (10) Business Days' notice of the time and place of any public sale or of the time at which a private sale will take place and that such notice is reasonable notification of such matters.

3.2.2   Debtor hereby authorizes Secured Party to file financing and continuation statements with respect to the Collateral without the signature of Debtor whenever lawful, and Debtor irrevocably constitutes and appoints Secured Party, and each of the officers of Secured Party, as Debtor's attorney-in-fact coupled with an interest for such purpose; and Debtor agrees to execute such financing and continuation statements as Secured Party may reasonably request.

3.2.3   Debtor hereby represents and warrants that no financing statement (other than financing statements showing Secured Party as the sole secured party, or with respect to liens or encumbrances, if any, expressly permitted by this Mortgage covering any of the Collateral or any proceeds thereof) is on file and in effect in any public office except pursuant hereto; and Debtor will at its own cost and expense, upon demand, furnish to Secured Party such further information and will execute and deliver to Secured Party such financing statements and other documents in form reasonably satisfactory to Secured Party and will do all such acts as Secured Party may at any time or from time to time reasonably request or as may be necessary or reasonably appropriate to establish and maintain a perfected security interest in the Collateral as security for the Secured Obligations, subject to no other liens or encumbrances, other than the Permitted Exceptions; and Debtor will pay the actual expense of filing or recording such financing statements or other documents, and this instrument, in all public offices wherever filing or recording is reasonably deemed by Secured Party to be desirable.

3.2.4   To the extent permitted by applicable law, the security interest created hereby is specifically intended to cover all rents, royalties, issues and profits, and all inventory accounts, accounts receivable and other revenues of the Mortgaged Property.

3.2.5   Certain of the Collateral is or will become "fixtures" (as that term is defined in the Uniform Commercial Code) in or on the Land and Improvements, and this Mortgage upon being filed for record in the real estate records of the County of Cuyahoga, Ohio, shall operate also as a financing statement and fixture filing upon such of the Collateral which is or may become fixtures.

3.2.6   Any copy of this Mortgage which is signed by Debtor or any carbon, photographic or other reproduction of this Mortgage may also serve as a financing statement under the Uniform Commercial Code by Debtor, whose address is set forth herein, in favor of Secured Party, whose address is set forth herein.

ARTICLE IV

6

4859-1371-1395, v. 2

CERTAIN REPRESENTATIONS, WARRANTIES
AND COVENANTS OF MORTGAGOR

Mortgagor hereby represents and warrants to and covenants with Mortgagee as of the date hereof as follows:

4.1     Payment of Indebtedness.  Mortgagor shall (a) punctually pay the Secured Obligations at the time and place and in the manner specified in the Loan Documents, according to the true intent and meaning thereof, all in such currency of the United States of America which at the time of such payment shall be legal tender for the payment of public and private debts, and (b) timely, fully and faithfully perform, discharge, observe and comply with each and all of Mortgagor's obligations to be performed under the Loan Documents.  Mortgagor hereby represents and warrants that, as of the date hereof, there exist no offsets, counterclaims or defenses against the Secured Obligations.

4.2     Title.  Mortgagor has and will at all times have (subject to the further provisions of this Mortgage) indefeasible fee title to the Mortgaged Property, subject to no lien, pledge, mortgage, mechanic's or materialman's lien, deed of trust, security interest, claim, lease, charge, option, right of first refusal, easement, restrictive covenant, encumbrance or other restriction, limitation, charge or right of others of any kind whatsoever (collectively, "Liens"), other than the Permitted Exceptions and any other items approved by Mortgagee after the date hereof or otherwise expressly permitted under the Loan Documents.  This Mortgage is and will at all times remain a valid and enforceable first lien on the Mortgaged Property, subject only to the Permitted Exceptions.  Subject to the Permitted Exceptions, Mortgagor hereby covenants and agrees that it will preserve such title, and will warrant and defend the same to Mortgagee, its successors and assigns, and will warrant and defend the validity and priority of the lien of this Mortgage against the claims of all persons and parties whomsoever.

4.3     Maintenance of Partnership/Corporate Existence; Due Authorization; Compliance with Laws; Etc.

4.3.1   Mortgagor is and shall remain a limited liability company in good standing under the laws of the State of Delaware, and shall remain qualified to do business in the State of Ohio, and Mortgagor covenants that it will do all things necessary to preserve and keep in full force and effect its existence, rights and privileges as a limited liability company under the laws of the State of Delaware.  Mortgagor now has and shall continue to have the full right, power and authority to operate and lease the Premises, to encumber the Mortgaged Property as provided herein and to perform all of the other obligations to be performed by Mortgagor under the Loan Documents.  Mortgagor is solvent, and no bankruptcy, reorganization, insolvency or similar proceeding under any state or federal law with respect to Mortgagor has been initiated.

4.3.2   The execution and delivery of the Loan Documents by Mortgagor, and performance by Mortgagor of its obligations thereunder have been duly authorized by all necessary limited liability company action on the part of Mortgagor and its constituent entities, and do not and will not violate any present law or any regulation, order, writ, injunction or

7

decree of any court or Governmental Authority applicable to Mortgagor or the Mortgaged Property (collectively, "Laws"), or result in a breach of any of the terms, conditions or provisions of, or constitute a default under, or (except as created by this Mortgage) result in the creation or imposition of any lien of any nature whatsoever upon any of the assets of Mortgagor pursuant to the terms of, any mortgage, deed of trust, indenture, agreement or instrument to which Mortgagor is a party or by which it or any of its properties is bound.

4.3.3  All authorizations, consents and approvals of, notices to, registrations or filings with, or other actions in respect of or by any Governmental Authority, required in connection with the execution and delivery of the Loan Documents by Mortgagor, and performance by Mortgagor of its obligations thereunder have been duly obtained, given or taken and are in full force and effect.

4.3.4  No material default has occurred and is continuing under any indentured or other material agreement or instrument to which Mortgagor is a party or by which its property is bound.

4.3.5  Mortgagor is and shall remain a Single Purpose Entity  and agrees that it will not acquire any additional real property without the prior written consent of Mortgagee, which consent may be withheld in its sole discretion.

4.4  Compliance With Law and Insurance Requirements; Maintaining Permits; Etc.

4.4.1  Mortgagor, at its own sole cost and expense, shall promptly comply in all material respects with all Laws, and all orders, rules and regulations (collectively, "Orders") which may be applicable to the Mortgaged Property or any part thereof, or to the use or manner of use of the Mortgaged Property or the owners, tenants or occupants thereof, whether or not any such Laws or Orders shall necessitate structural changes or improvements or interfere with the use or enjoyment of the Mortgaged Property.  Mortgagor shall also procure, pay for and maintain all permits, licenses, approvals and other authorizations, necessary for the operation of its business at the Premises and the lawful use and occupancy of the Premises, or any part thereof, in connection therewith.

4.4.2  Mortgagor shall, at its own sole cost and expense, observe and comply in all material respects with the requirements of the policies of public liability, fire and all other insurance at any time in force with respect to the Mortgaged Property, and Mortgagor shall, in the event of any violation or attempted violation of the provisions of this subsection or subsection 4.4.1 by any occupant of any portion of the Premises, take steps, immediately upon actual knowledge of such violation or attempted violation, to remedy or prevent the same, as the case may be.

4.4.3  Mortgagor shall have the right, after Notice to Mortgagee, to contest by appropriate legal proceedings, diligently conducted in good faith, in the name of Mortgagor, the validity or application of any Laws, Orders or other matters of the nature referred to in subsection 4.4.1, subject to the following:

8

If by the terms of any such Law or Order, compliance therewith pending the prosecution of any such proceeding may legally be delayed without subjecting Mortgagor or Mortgagee to any liability (other than for the payment or accrual of interest), civil or criminal, for failure so to comply therewith, or if any lien, charge or civil liability would be incurred by reason of any such delay, the same would not subject the Mortgaged Property or any part thereof to forfeiture, loss or suspension of operations, and Mortgagor (a) furnishes Mortgagee security reasonably satisfactory to Mortgagee against any loss or injury by reason of such contest or delay, and (b) prosecutes the contest with due diligence, then Mortgagor may delay compliance therewith until the final determination of any such proceeding.

Mortgagor covenants that Mortgagee shall not suffer or sustain any liabilities or expenses by reason of any act or thing done or omitted to be done by Mortgagor pursuant to this subsection and that Mortgagor shall indemnify and hold harmless Mortgagee from any such liability or expense.

4.5     Taxes and other Charges; Deposits with Mortgagee.

4.5.1   Subject to the provisions of Section 4.7 hereof and the terms and conditions of the Loan Agreement, Mortgagor, from time to time when the same shall become due and payable and before any fine, penalty or additional interest may be added or imposed for late payments, will pay and discharge all taxes of every kind and nature (including real and personal property taxes and income, franchise, withholding, profits and gross receipts taxes), all general and special assessments, levies, permits, inspection and license fees, all water and sewer rents and charges, and all other public charges, whether of a like or different nature, and any easement fees or charges, imposed upon or assessed against the Mortgaged Property or any part thereof or upon the revenues, rents, issues, income and profits of the Mortgaged Property or arising in respect of the occupancy, use, possession or sale thereof (collectively, "Impositions"). If any special assessment is payable in installments without payment of any penalty or premium, other than interest at a non-default rate prior to the due date of such installment, then Mortgagor may pay the same in installments.   Mortgagor will deliver to Mortgagee receipts or other evidence reasonably satisfactory to Mortgagee of the payment of all Impositions, promptly after the due date thereof; provided, however, that the foregoing requirement shall not be applicable in the event that Mortgagor has established and adequately funded a tax escrow account with Mortgagee in accordance with the provisions of Section 6.04 of the Loan Agreement.  Mortgagor shall not claim or demand or be entitled to any credit or credits on account of the Secured Obligations for any part of the Impositions, and no deduction shall otherwise be made or claimed from the taxable value of this Mortgage or the Secured Obligations.

4.5.2   In accordance with the provisions of Section 6.04 of the Loan Agreement, Mortgagee shall require the monthly deposit by Mortgagor of an additional amount sufficient to discharge the obligations of Mortgagor under subsection 4.5.1 above when they become due and to pay all of the premiums on any insurance policies required by this Mortgage.   The determination of the amount so payable and of the fractional part thereof to be deposited with Mortgagee, so that the aggregate of such deposits shall be sufficient for this purpose, shall be

9

made by Mortgagee in its reasonable discretion.  Such amounts shall be held by Mortgagee in a non-interest bearing account and applied to the payment of the obligations in respect of which such amounts were deposited or, at Mortgagee's option, to the payment of said obligations in such order or priority as Mortgagee shall determine, on or before the respective dates on which the same or any of them would become delinquent or, at Mortgagee's option, upon the occurrence and during the continuance of an Event of Default, to the payment of any Secured Obligation in such order and priority as Mortgagee shall determine.  If Mortgagee shall determine that the amounts then on deposit therefor shall be insufficient for the payment of such obligations under 4.5.1 in full, Mortgagor shall, within ten (10) Business Days after demand, deposit the amount of the deficiency with Mortgagee.  Nothing herein contained shall be deemed to affect any right or remedy of Mortgagee under any provisions of this Mortgage or of any Law to pay any such amount and to add the amount so paid, together with interest at the Default Rate (as defined in the Loan Agreement), to the Secured Obligations.

4.6    Discharge of Liens.  Mortgagor shall pay, from time to time when the same shall become due, all claims and demands of mechanics, materialmen, laborers and others which, if unpaid, might result in or permit the creation of a Lien (other than Permitted Exceptions) on the Mortgaged Property or any part thereof, or on the revenues, rents, royalties, issues, income and profits arising therefrom, and in general will do or cause to be done everything necessary so that the first lien of this Mortgage shall be fully preserved at the sole cost and expense of Mortgagor and without expense to Mortgagee.  Subject to Section 8.02 of the Loan Agreement, if any such Liens are filed, Mortgagor will cause the same to be permanently discharged of record by payment or otherwise, unless Mortgagor shall in good faith and at its own expense, be contesting such Lien or Liens or the validity thereof by appropriate legal proceedings which shall operate to prevent the collection thereof or other realization thereon or the sale or forfeiture of the Mortgaged Property or any part thereof to satisfy the same; provided that during such contest Mortgagor shall provide an indemnity bond or other security reasonably satisfactory to Mortgagee to cover the amount of the contested item or items and the amount of the interest and penalties covering the period through which such proceedings may be expected to last, and in any event assuring the discharge of Mortgagor's obligation hereunder and of any additional charge, penalty or expense arising from or incurred as a result of such contest; and if Mortgagor shall have posted a bond as security against payment of any such Lien, interest, penalties and other charges related thereto, Mortgagee shall be named as an additional obligee under the bond. Except as provided above, Mortgagor will not directly or indirectly create, incur or suffer to exist any Lien on the Mortgaged Property or any part thereof (including without limitation any Lien securing the repayment of a loan made to Mortgagor by any partner(s), shareholder(s), officer(s), director(s) or trustee(s) of Mortgagor), whether or not junior to the lien of this Mortgage, other than the Permitted Exceptions, and such other documents as may be executed as further security for the Note or in favor of Mortgagee.

4.7    Contest of Impositions.  Nothing in Section 4.5 shall require the payment or discharge of any Imposition so long as Mortgagor shall in good faith and at its own expense, contest the same or the validity thereof by appropriate legal proceedings which shall operate to prevent the collection thereof or other realization thereon or the sale or forfeiture of the Mortgaged Property or any part thereof to satisfy the same; provided that during such contest

10

Mortgagor shall provide security reasonably satisfactory to Mortgagee to cover the amount of the contested item or items and the amount of the interest and penalties covering the period through which such proceedings may be expected to last, and in any event assuring the discharge of Mortgagor's obligation hereunder and of any additional charge, penalty or expense arising from or incurred as a result of such contest; if Mortgagor shall have posted a bond as security against payment of any Imposition, interest, penalties and other charges related thereto, Mortgagee shall be named as an additional obligee under the bond.

      4.8    Mortgagee's Taxes.  Mortgagor will pay all taxes incurred by Mortgagee by reason of Mortgagee's ownership of the Note, this Mortgage or any other Loan Document, including without limitation all real estate transfer and like taxes imposed in connection with a transfer of ownership of all or a portion of the Mortgaged Property pursuant to a foreclosure, a deed in lieu of foreclosure or otherwise.  Notwithstanding the foregoing, Mortgagor shall not be required to pay any income or franchise taxes imposed on Mortgagee's net income.

      4.9    Use of Mortgaged Property.  Mortgagor will maintain, preserve and renew from time to time such rights of way, easements, grants, privileges, licenses and franchises as are necessary for the use and operation of the Mortgaged Property in the manner heretofore used and operated, and will not use or operate, or permit the use or operation of, the Mortgaged Property for any other purpose (other than incidental uses related to such primary use), initiate, join in or consent to any new private restrictive covenant (apart from any Permitted Exception), easement or other public or private restrictions to the use of the Mortgaged Property, without the prior written consent in each instance of Mortgagee, which may be withheld in its reasonable discretion.  Mortgagor shall, however, comply in all material respects with all lawful and restrictive covenants which may at any time affect the Mortgaged Property, and with zoning ordinances and other private or public restrictions as to the use thereof.  Mortgagor will not knowingly or willfully cause or maintain any nuisance in, at or on the Mortgaged Property. Mortgagor will pay or cause to be paid all charges for all public and private utility services, all public or private rail and highway services (if any), all public or private communications services and all sprinkler systems and protective services at any time rendered to or in connection with the Mortgaged Property or any part thereof, will comply in all material respects or use reasonable efforts to cause compliance with all contracts relating to any such services, and will do all other things required for the maintenance and continuance of all such services.

      4.10 Maintenance of Mortgaged Property.  Mortgagor shall use commercially reasonable efforts to maintain the Mortgaged Property, including all streets, sidewalks and curbs comprising same, in good repair and condition, and will continuously (other than during periods of repair after major casualty or substantial condemnation, with respect to the portions of the Mortgaged Property damaged or condemned) operate the Mortgaged Property in the manner and for the purposes heretofore used, and, at its sole cost and expense, will make or cause to be made, as and when the same shall become necessary, all structural and non-structural, exterior and interior, ordinary or extraordinary, foreseen and unforeseen repairs, renewals and replacements necessary to that end, and upon being apprised of any material defect in the repair or condition of the Mortgaged Property, will repair or cure, or cause to be repaired or cured, such defect, in each

11

case at its own expense and with due diligence. All such repairs, renewals and replacements shall be at least substantially equal in quality to the original Improvements.

4.11  Maintenance of Personal Property. Mortgagor shall cause the Improvements to be equipped with the Personal Property as, to the extent and in the manner, as shall be necessary, appropriate or required for the operation of the Premises. Except where appropriate replacements, free of superior Liens, are immediately made of a value at least equal to the value of the Personal Property being removed, no Personal Property covered hereunder shall be removed from the Premises without the prior written consent of Mortgagee. The Personal Property so disposed of shall be promptly replaced by Personal Property of the same character and of at least equal usefulness and quality.

4.12  Alterations.

4.12.1 Mortgagor shall not, without the prior written consent of Mortgagee, which consent shall not be unreasonably withheld, conditioned or delayed, construct any new Improvements on the Premises other than those which are permitted by the following provisions of this Section 4.12.1. Mortgagor shall give Mortgagee Notice of, and a copy of any plans prepared for any alteration which is reasonably estimated to cost $250,000 (the "Alteration Threshold") or more (inclusive of architectural and engineering fees) or is structural. So long as no Event of Default shall have occurred and be continuing hereunder, Mortgagor shall have the right at any time and from time to time to make or cause to be made reasonable alterations of and additions to the Mortgaged Property or any part thereof, provided that any alteration or addition (i) shall not, in Mortgagee's reasonable discretion, change the general character of the Mortgaged Property, or reduce the fair market value thereof below its fair market value immediately before such alteration or addition, or otherwise materially alter the overall quality of the Mortgaged Property, (ii) shall be effected with due diligence, in a good and workmanlike manner and with new, first-class materials and in compliance in all material respects with all requirements of applicable Laws, (iii) shall (subject to Mortgagor's right to contest the same in accordance with the provisions of Section 4.7 hereof) be promptly and fully paid for, or caused to be paid for, by Mortgagor at its sole cost and expense, and (iv) shall be made, in case the estimated cost of such alteration or addition exceeds the Alteration Threshold or is structural, (A) only after Mortgagee shall have consented in writing thereto prior to the commencement of such work and in all material respects in accordance with plans and specifications reasonably satisfactory to Mortgagee, (B) only after Mortgagor shall have furnished to Mortgagee a completion or performance bond, a letter of credit or cash deposit or other security satisfactory to Mortgagee as security for the completion of such work if required by Mortgagee, and (C) if structural, only after submission of appropriate plans to Mortgagee and written approval thereof by Mortgagee. For purposes of clause (iv) of this subsection, the Alteration Threshold limitation shall apply to any alteration or addition taken separately or, if such alteration or addition is made together with other alterations or additions that constitute a single construction plan or project (whether accomplished in successive stages or procedures), then taken in the aggregate as well. The cost of all such alterations and additions to the Mortgaged Property shall be paid in cash or its equivalent, so that the Mortgaged Property shall at all times be free of Liens for labor and materials supplied or claimed to have been supplied to the Mortgaged Property (subject to

12

Mortgagor's rights of contest provided for in Section 4.7 hereof). All alterations of and additions to the Mortgaged Property made by Mortgagor, or by any tenant of the Mortgaged Property to the extent such alterations or additions become part of the Mortgaged Property pursuant to such tenant's lease, shall immediately become and shall remain a part of the Mortgaged Property, and shall be subject to the lien of this Mortgage.

4.12.2 Mortgagor shall file (or cause the filing of) an appropriate Notice of Commencement pursuant to Section 1311.04 of the Ohio Revised Code in the office of the county recorder in the county where the Mortgaged Property is located after the recording of this Mortgage and prior to the commencement of any construction, demolition or site preparation activities on or to the Mortgaged Property. If Mortgagor fails to file (or cause the filing of) a Notice of Commencement in connection with any construction or site preparation activities on or to the Mortgaged Property, Mortgagee may do so, and all costs and expenses actually incurred by Mortgagee in making such filing, including but not limited to costs and expenses incurred in obtaining the information required to make such filing and the costs of preparing and recording the Notice of Commencement, shall be immediately due and payable by Mortgagor to Mortgagee and, until paid, shall be additional indebtedness of Mortgagor to Mortgagee secured by this Mortgage and on which interest shall accrue at the Default Rate. Mortgagor acknowledges and agrees that Mortgagee is not, and shall not be deemed to be, an agent of Mortgagor in connection with any construction or site preparation activities undertaken by Mortgagor. Mortgagor indemnifies and shall defend and hold harmless Mortgagee from and against any claims against Mortgagee relating to any construction or site preparation activities undertaken by Mortgagor.

4.13 Waste. Mortgagor shall not commit or suffer any material physical waste of the Mortgaged Property or make any change in the use of the Mortgaged Property which will in any way materially increase the risk of any fire or other hazard arising out of the operation of the Mortgaged Property, or do or permit to be done thereon anything that may in any way impair the security of this Mortgage.

4.14 Insurance. Mortgagor shall effect and maintain insurance for Mortgagor and the Mortgaged Property, including the Improvements, in accordance with the provisions of Section 6.01 of the Loan Agreement. Section 6.01 of the Loan Agreement is hereby incorporated in its entirety by this reference as if fully set forth herein.

4.15 Damage or Destruction.

4.15.1 In the event of any damage to or destruction of the Premises, Mortgagor shall, promptly after obtaining knowledge of the occurrence thereof, give notice thereof to Mortgagee and shall, regardless of the dollar amount of such damage, proceed with reasonable diligence, at Mortgagor's sole cost and expense, to repair and restore or cause to be repaired or restored the Premises or the portion thereof so damaged as nearly as practically possible to the condition the same were in immediately prior to such damage. If any Personal Property is damaged or lost as a result of such fire or other casualty, Mortgagor shall likewise, at its sole cost and expense, whether or not any insurance proceeds are available or adequate for such purpose, replace or cause to be replaced the Personal Property so damaged or lost. In the event that

13

4859-1371-1395, v. 2

Mortgagor fails to advance any funds required for the completion of any such repairs or restoration, Mortgagee may, but shall not be obligated to, advance the required funds or any portion thereof, and Mortgagor shall, on demand, reimburse Mortgagee for all sums advanced and actual expenses incurred by Mortgagee in connection therewith, together with interest thereon at the then applicable rate as provided for in the Loan Agreement from the date each such advance is made to the date of receipt by Mortgagee of reimbursement from Mortgagor, which amounts and interest shall become part of the Secured Obligations and be secured hereby. All repairs and restoration required to be made by Mortgagor hereunder shall be performed in material compliance with all Laws and Orders and shall be without any liability or actual expense of any kind to Mortgagee.

4.15.2 If by reason of any damage or destruction, any insurance proceeds are paid under any insurance policy maintained pursuant to subsection 4.14 hereof or otherwise, such proceeds shall be paid in accordance with Section 6.02 of the Loan Agreement.

4.15.3 Notwithstanding anything to the contrary contained herein, the application of any insurance proceeds by Mortgagee to the Secured Obligations or the repair or restoration of the Mortgaged Property as provided in this Section 4.15 shall not reduce or excuse in any manner whatsoever Mortgagor's obligations diligently to repair and restore or cause to be repaired and restored the damaged portion of the Premises, as required under subsection 4.15.1 hereof.

4.15.4 No destruction of or damage to the Mortgaged Property, or any part thereof, by fire or other casualty whatsoever, whether such damage or destruction be partial or total or otherwise, shall relieve Mortgagor from its liability to pay in full as and when due the Secured Obligations, or from timely, fully and faithfully performing all its other obligations hereunder and under the Loan Documents. No application of insurance proceeds to the reduction of the Secured Obligations shall have the effect of releasing the lien of this Mortgage from all or any portion of the Mortgaged Property until and unless all of the Secured Obligations have been paid in full.

4.16 Condemnation; Knowledge of Proceedings.

4.16.1 Mortgagor, within three (3) Business Days after obtaining knowledge of the institution or pending institution of any proceedings for the condemnation of the Mortgaged Property or any portion thereof, shall notify Mortgagee thereof, and Mortgagee may participate in any such proceedings and be represented by counsel of its selection. Mortgagor shall not make any agreement in lieu of condemnation of the Mortgaged Property or any portion thereof without the prior written consent of Mortgagee in each instance. In the event of the condemnation of the Mortgaged Property or any portion thereof, any awards for condemnation or payments in lieu thereof are hereby assigned and shall be paid to Mortgagee and shall be used in accordance with Section 6.03 of the Loan Agreement.

4.16.2 In the event that Mortgagee shall determine after an event of condemnation that the taking of the Mortgaged Property was so extensive as to make continued

14

operation thereof not commercially viable, all of the Secured Obligations shall become immediately due and payable, and any awards for condemnation or payments in lieu thereof shall be paid over to Mortgagee and applied in reduction of the Secured Obligations in such order as Mortgagee may determine in its discretion, and any excess shall be paid to Mortgagor. Otherwise, whether or not any condemnation proceeds are available therefor, Mortgagor shall proceed with reasonable diligence, at Mortgagor's sole cost and expense, to repair and restore or cause to be repaired or restored the Mortgaged Property into an architectural and commercially viable premises similar (to the greatest extent possible) to the previously existing structure, with such additional improvements as Mortgagor may elect to add.   Subject to the provisions of Section 6.03 of the Loan Agreement, in the case of a condemnation which is not so extensive as to make continued operation of the Mortgaged Property not commercially viable, Mortgagee shall hold the condemnation proceeds in an interest bearing account and apply such proceeds to the repair and restoration of the Mortgaged Property by disbursing the same to Mortgagor on a periodic basis and with such retainage as Mortgagee shall deem appropriate, but no more frequently than monthly, as the repair and restoration work progresses, and upon receipt by Mortgagee of such guaranties of completion, surety bonds, requisitions, architect's certificates and title updates as Mortgagee shall in its good faith discretion require (including without limitation requiring Mortgagor to show that there are at all times sufficient funds (in addition to the available condemnation proceeds, as the case may be) available for the repair and restoration in question).   Provided that Mortgagee shall not have elected to cause the acceleration of the Secured Obligations pursuant to the first sentence of this subsection, in the event that Mortgagor fails to make any payment in respect of any such repairs and restorations, Mortgagee may, but shall not be obligated to, advance funds required for the completion of such repairs or restoration, and Mortgagor shall, on demand, reimburse Mortgagee for all sums advanced and expenses actually incurred by Mortgagee in connection therewith (including without limitation the charges, disbursements and reasonable fees of Mortgagee's counsel), together with interest thereon at the then applicable rate as provided for in the Loan Agreement from the date each such advance is made or expense paid by Mortgagee until the date on which repayment thereof is received by Mortgagee, which amounts and the interest thereon shall become part of the Secured Obligations and be secured hereby.   In the event that there are surplus proceeds of any award for condemnation or payments in lieu thereof, all such surplus proceeds shall be paid over to and/or retained by Mortgagee and shall be applied in reduction of the Secured Obligations in such order and priority as Mortgagee may determine in its discretion.   Any surplus proceeds of any award for condemnation or payments in lieu thereof remaining after the payment in full of the Secured Obligations shall be paid to Mortgagor or to any other person legally entitled thereto.

4.16.3   Notwithstanding any taking by public or quasi-public authority through eminent domain or otherwise, Mortgagor agrees to continue to pay all amounts due in respect of the Secured Obligations, which shall not be reduced until any award or payment therefor shall have been actually received by Mortgagee for application to the discharge of the Secured Obligations.   No application of the proceeds of any award for condemnation or payments in lieu thereof to the reduction of the Secured Obligations shall have the effect of releasing the lien of this Mortgage from the portion, if any, of the Mortgaged Property not taken until and unless the principal sum secured hereby, the interest thereon and the remainder of the Secured Obligations have been paid in full.

15

4.16.4  In the event of any temporary taking of the Mortgaged Property or any portion thereof in condemnation or by eminent domain, Mortgagor shall continue to pay all principal, interest and other sums and charges secured hereby when due and payable under the Note and the other Loan Documents and, so long as no Event of Default exists, receive the proceeds of any award for a temporary taking; provided, however, that if any award payable to Mortgagor on account of such taking is made in a lump sum or is payable other than in equal monthly installments, then the award shall be paid over to Mortgagee (who shall hold the same in a non-interest bearing account) and applied by Mortgagee to the payment of each monthly installment of interest and principal due under the Note and all of the other Secured Obligations as and when the same become due and payable; and provided, further, that the excess (if any) of such award received by Mortgagee over such monthly installment of interest and other Secured Obligations falling due for the entire period with respect to which such award was paid shall, monthly, be paid to or on behalf of Mortgagor for use solely in paying, with respect to the Premises, real estate and personal property taxes, insurance premiums, labor charges, repairs, utilities, accounting and legal expenses and other operating expenses; and provided further, that any unapplied portion of such award held by Mortgagee when such taking ceases or expires, or after all of the Secured Obligations shall have been paid in full (whichever first occurs), plus any interest accrued thereon, shall be repaid to Mortgagor.  If while the proceeds of any such award are held by Mortgagee an Event of Default shall have occurred and be continuing, or Mortgagee shall have accelerated the Secured Obligations, Mortgagee may apply such proceeds in reduction of the Secured Obligations in such order and priority as Mortgagee shall in its discretion determine.

4.17  General Right of Entry.  Mortgagor agrees that it will permit Mortgagee from time to time upon reasonable advance notice (not less than one Business Day) and during regular business hours (or upon occurrence of any emergency situation, with advance notice and at a time reasonable under the circumstances) to enter upon and inspect the Mortgaged Property to determine its compliance with the requirements of this Mortgage and the other Loan Documents and to ascertain its condition.

4.18  Separate Tax Lot.  Mortgagor represents and warrants that the Premises are assessed for real estate tax purposes as a wholly independent tax lot, separate from any adjoining improvements not constituting a part of such lots.

4.19  Books of Account.  Mortgagor covenants that it will, at its own expense, deliver to Mortgagee, within (10) ten days after any request, a written certificate, in recordable form, setting forth to its knowledge the amount then due under this Mortgage and whether to its knowledge any offsets or defenses exist against the indebtedness secured hereby; and, if any such offsets or defenses are alleged to exist, then the nature of such offsets or defenses.  Such certificate shall also contain a statement that Mortgagor has no knowledge of the occurrence of any Event of Default nor of any other event, which, with the giving of notice or passage of time, or both, would constitute an Event of Default which has occurred and remains uncured as of the date of such certificate; or, if any such Event of Default or other default has occurred and remains uncured as of the date of such certificate, then such certificate shall contain a statement

16

specifying the nature thereof, the time for which the same has continued and the action which Mortgagor has taken or proposes to take with respect thereto and setting forth or describing such additional matters with respect to Mortgagor, the Loan or the Mortgaged Property as Mortgagee shall request and such additional information as Mortgagee may reasonably request. Such certificate shall be certified to, and may be relied upon by, such parties as Mortgagee shall direct.

4.19.3 Mortgagor shall deliver to Mortgagee all of the financial statements, tax returns and other documents required pursuant to Section 7.01 of the Loan Agreement.

4.20 Reserved.

4.21 Single Purpose Entity. Mortgagor shall at all times comply with the single purpose entity requirements as set forth in Section 4.18 of the Loan Agreement.

4.22 Recording, Filing and Perfection of Security Interests; Fees.

4.22.1 Mortgagor, promptly upon the execution and delivery of the Note, this Mortgage, the Loan Agreement, the Assignment of Leases and the Indemnity Agreement and thereafter from time to time, will cause this Mortgage, the Assignment of Leases and any other Loan Document creating a lien or evidencing the lien of this Mortgage upon the Mortgaged Property and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and to protect the lien hereof upon, and the interest of Mortgagee in, the Mortgaged Property.

4.22.2 Mortgagor will pay all filing, registration and recording fees, and all expenses incident to the execution and acknowledgment of this Mortgage and any other Loan Document (including any security instrument with respect to the Personal Property and Proceeds) and any instrument of further assurance, and all federal, state, county and municipal mortgage or deed of trust recording taxes, stamp taxes and other taxes, duties, imports, assessments and charges arising out of or in connection with the execution and delivery of the Loan Documents, any mortgage or deed of trust supplemental hereto, any supplemental security instrument with respect to the Personal Property and Proceeds or any instrument of further assurance.

4.23 Further Acts and Assurances. Mortgagor will, at its sole cost and expense, and without actual expense to Mortgagee, do, execute, acknowledge and deliver all and every such further reasonable acts, deeds, conveyances, deeds of trust, mortgages, assignments, notices of assignment, transfers and assurances as Mortgagee shall from time to time reasonably require for the better assuring, conveying, assigning, transferring and confirming unto Mortgagee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which Mortgagor may be or may hereafter become bound to convey or assign to Mortgagee for the benefit of Mortgagee, or for carrying out the intention or facilitating the performance of the terms of this Mortgage, or filing, registering or recording this Mortgage, and, on demand, will execute and deliver, and hereby authorizes Mortgagee to execute and file in Mortgagor's name, to the extent it may lawfully do so, one or more financing statements, chattel mortgages or

comparable security instruments, to evidence more effectively the lien of this Mortgage or the lien intended hereby upon the Mortgaged Property.

4.24   Use of Union Labor.  So long as any Secured Obligations shall be unsatisfied and secured by this Mortgage, Mortgagor hereby agrees that it will employ, and will cause its partners, officers, directors and agents to employ, only contractors and subcontractors subject to collective bargaining agreements with unions affiliated with the Building and Construction Trades Department of the AFL-CIO as of January 1, 2001 to perform the following work with respect to the Mortgaged Property: (i) expansion of the physical dimensions of the Improvements, (ii) any work in connection with a restoration of the Premises following a casualty, (iii) transportation of any major construction materials, (iv) replacement of the roof of the Premises, (v) major repair to or replacement of any HVAC system of the Premises, (vi) elevator repair and maintenance, and/or (vii) the repair, replacement or installation of any electric panel board(s) and entry service cables.  Any breach of the foregoing requirements during the term of the loan secured hereby (hereinafter referred to as the "Loan") shall entitle Lender to increase the Interest Rate (as that term is defined in the Loan Agreement) by $1/8^{th}$ of 1% per breach for the remaining term of the Loan.

4.25   Appraisals.  Mortgagee shall have the right to obtain a new or updated appraisal of the Mortgaged Property from time to time as Mortgagee may reasonably require; provided, however, that Mortgagee shall not require such appraisals more than once every three (3) years during the term of the Loan, except that Mortgagee may require an appraisal at any time in the event that: (i) an Event of Default occurs and is continuing hereunder, or (ii) there occurs a Material Adverse Effect.  Mortgagor shall cooperate with Mortgagee in this regard.  Mortgagor shall pay for any such appraisal upon Mortgagee's request.  Mortgagee shall provide Mortgagor with a copy of any such appraisal.

4.26   Limitation of Indebtedness.  Mortgagor hereby covenants and agrees that it will not, without the prior written consent in each instance of Mortgagee, incur any indebtedness secured by a lien on the Mortgaged Property.

ARTICLE V
EVENTS OF DEFAULT

5.1   Events of Default.  It shall be an event of default ("Event of Default") if one or more of the following shall occur and be continuing:

5.1.1   If a default shall occur in the payment of any installment of interest or principal due under the Note or the Loan Agreement when and as the same shall have become due and payable as in the Note and Loan Agreement provided, subject to all applicable notice and cure periods, if any, set forth therein.

5.1.2   If a default shall occur in the payment of any of the other Secured Obligations (excluding installments of interest and principal), when and as the same shall have

18

become due and payable as in the Note and any other Loan Document provided, or in the performance of any of Mortgagor's other obligations under any of the Loan Documents which performance consists solely of the payment of a sum of money, (i) prior to maturity (whether such maturity occurs by acceleration, lapse of time or otherwise), if such default shall have continued for a period of ten (10) Business Days after Notice thereof to Mortgagor, and (ii) upon maturity (whether such maturity occurs by acceleration, lapse of time or otherwise).

5.1.3  If a default shall occur in the due observance or performance of any covenant or agreement on the part of Mortgagor contained in Section 4.14 hereof.

5.1.4  If Mortgagor shall suffer or permit any Transfer to occur, either voluntarily or involuntarily, in violation of Section 8.01 of the Loan Agreement, or if any Improvement or article of Personal Property is intentionally removed or demolished by Mortgagor other than in accordance with the provisions of Sections 4.10 through 4.12 hereof. The provisions of this subsection 5.1.4 shall apply to each and every such Transfer, removal and demolition, whether or not Mortgagee has waived by its action or inaction its rights with respect to any previous Transfer, removal or demolition.

5.1.5  If at any time any representation or warranty made under any Loan Document or any other document or certificate provided in connection with any Loan Document or the Secured Obligations shall be proven to have been materially incorrect when made or deemed made, as the case may be.

5.1.6  If default shall be made in the due observance or performance of any covenant, condition or agreement under this Mortgage, other than those defaults referred to in or covered by subsections 5.1.1 through 5.1.6 above, and such default shall continue unremedied for a period of more than thirty (30) days after Mortgagee gives Notice thereof to Mortgagor.

5.1.7  If any default shall be made in the due observance or performance of any covenant, condition or agreement in any Loan Document, and such default shall have continued beyond the grace and cure period, if any, provided for therein.

5.1.8  If there should occur after the date hereof the passage of any law in the Jurisdiction deducting from the value of real property for the purpose of taxation any lien or encumbrance thereon or changing in any way the laws for the taxation of deeds of trust or mortgages or debts secured by deeds of trust or mortgages for state or local purposes or the manner of the collection of any such taxes, and imposing a tax, either directly or indirectly, on any Loan Document or the indebtedness secured by this Mortgage, and Mortgagor fails or is otherwise unable to make timely payment therefor.

5.1.9  If a default shall occur under any obligation set forth in any Permitted Exception or any other agreement, contract, instrument or indenture to which Mortgagor is a party beyond the period of grace and cure, if any, provided therein, the effect of which entitles

19

any obligee or obligees of such obligation to foreclose upon all or any material portion of the Mortgaged Property, or which otherwise results in a Material Adverse Effect.

5.1.10  If an Event of Default shall occur and be continuing beyond any applicable grace or cure period, if any, under the Loan Agreement.

ARTICLE VI
REMEDIES AND RELATED MATTERS

6.1  <u>Remedies</u>.  Upon the occurrence and during the continuance of any Event of Default, Mortgagee, at the option of Mortgagee, may:

6.1.1  by notice to Mortgagor, declare the entire principal amount under the Note then outstanding, and all accrued and unpaid interest thereon, to be immediately due and payable, and upon such declaration such principal amount and said accrued and unpaid interest and all other Secured Obligations shall become and be immediately due and payable, anything in the Note or in this Mortgage to the contrary notwithstanding;

6.1.2  by itself, its agents or attorneys, or by a court-appointed receiver, enter into and upon all or any part of the Mortgaged Property and each and every part thereof and exclude Mortgagor, its agents and servants wholly therefrom; and having and holding the same, use, operate, manage and control the Mortgaged Property and conduct the business thereof, either personally or by its superintendents, managers, agents, servants, attorneys or receivers; and upon every such entry, at the expense of the Mortgaged Property, from time to time, either by purchase, repairs or construction, maintain and restore the Mortgaged Property and, likewise make all necessary or proper repairs, renewals and replacements and such alterations, betterments, additions and improvements thereto and thereon as it may deem reasonably advisable and insure the same; and in every such case Mortgagee shall have the right to manage and operate the Mortgaged Property and to carry on the business thereof and exercise all rights and powers of Mortgagor, as its attorney-in-fact, coupled with an interest, or otherwise, as it shall deem best; and Mortgagee shall be entitled to collect and receive all Rents and other earnings, revenues, issues, profits and income of the Mortgaged Property and after deducting the expenses of conducting the business thereof and all maintenance, repairs, renewals, replacements, alterations, additions, betterments and improvements and amounts necessary to pay for taxes, assessments, insurance and prior or other proper charges upon the Mortgaged Property or any part thereof, as well as just and reasonable compensation for the services of all attorneys, counsel, agents, clerks, servants and other employees engaged or employed by it, Mortgagee may apply the remainder of the monies so received by it, first to the payment of any other sums required to be paid by Mortgagor under this Mortgage; then to the payment of all other Secured Obligations in such order as Mortgagee shall elect; and the balance, if any, shall be turned over to Mortgagor or such other person as may be lawfully entitled thereto;

**6.1.3  FOR THE PURPOSE OF OBTAINING POSSESSION OF THE MORTGAGED PROPERTY, MORTGAGOR HEREBY AUTHORIZES AND**

20

EMPOWERS ANY ATTORNEY OF ANY COURT OF RECORD IN THE STATE OF OHIO OR ELSEWHERE, AS ATTORNEY FOR MORTGAGOR AND ALL PERSONS CLAIMING UNDER OR THROUGH MORTGAGOR, UPON THE OCCURRENCE AND DURING THE CONTINUANCE OF AN EVENT OF DEFAULT, TO SIGN AN AGREEMENT FOR ENTERING IN ANY COMPETENT COURT AN AMICABLE ACTION IN EJECTMENT FOR POSSESSION OF THE MORTGAGED PROPERTY AND TO APPEAR FOR AND CONFESS JUDGMENT AGAINST MORTGAGOR, AND AGAINST ALL PERSONS CLAIMING UNDER OR THROUGH MORTGAGOR, IN FAVOR OF MORTGAGEE, FOR RECOVERY BY MORTGAGEE OF POSSESSION THEREOF, FOR WHICH THIS MORTGAGE, OR A COPY THEREOF VERIFIED BY AFFIDAVIT, SHALL BE A SUFFICIENT WARRANT; AND THEREUPON A WRIT OF POSSESSION MAY IMMEDIATELY ISSUE FOR POSSESSION OF THE MORTGAGED PROPERTY, WITHOUT ANY PRIOR WRIT OR PROCEEDING WHATSOEVER AND WITHOUT ANY STAY OF EXECUTION.  IF FOR ANY REASON AFTER SUCH ACTION HAS BEEN COMMENCED IT SHALL BE DISCONTINUED, OR POSSESSION OF THE MORTGAGED PROPERTY SHALL REMAIN IN OR BE RESTORED TO MORTGAGOR, MORTGAGEE SHALL HAVE THE RIGHT FOR THE SAME DEFAULT OR ANY SUBSEQUENT DEFAULT TO BRING ONE OR MORE FURTHER AMICABLE ACTIONS AS ABOVE PROVIDED TO RECOVER POSSESSION OF ANY MORTGAGED PROPERTY.  MORTGAGEE MAY BRING AN AMICABLE ACTION IN EJECTMENT AND CONFESS JUDGMENT THEREIN BEFORE OR AFTER THE INSTITUTION OF PROCEEDING TO FORECLOSE THIS MORTGAGE OR TO ENFORCE THE NOTE, OR AFTER ENTRY OF JUDGMENT THEREON OR ON THE NOTE, OR AFTER A SHERIFF'S SALE OF THE MORTGAGED PROPERTY IN WHICH MORTGAGEE IS THE SUCCESSFUL BIDDER, IT BEING THE UNDERSTANDING OF THE PARTIES THAT THE AUTHORIZATION TO PURSUE SUCH PROCEEDINGS FOR OBTAINING POSSESSION AND CONFESSION OF JUDGMENT THEREIN IS AN ESSENTIAL PART OF THE REMEDIES FOR ENFORCEMENT OF THE MORTGAGE AND THE NOTE, AND SHALL SURVIVE ANY EXECUTION SALE TO MORTGAGEE.

6.1.4    with or without entry, personally or by its agents or attorneys insofar as applicable:

(a)    institute and maintain an action of mortgage foreclosure against the Mortgaged Property and the interests of Mortgagor therein in accordance with the laws of the State of Ohio and the provisions hereof for all Secured Obligations secured hereby or for any portion of such Secured Obligations or any other sums secured hereby which are then due and payable, subject to the continuing lien of this Mortgage for the balance of the Secured Obligations not then due; it being agreed that several sales may be made hereunder without exhausting the rights of sale for any other breach by Mortgagor of any of the Secured Obligations secured hereby, it being the purpose to provide for foreclosure and sale of the Mortgaged Property, or any portion thereof, for any matured portion of any of the Secured Obligations secured hereby or otherwise provided for herein without exhausting the power to

21

4859-1371-1395, v. 2

foreclose and sell the Mortgaged Property, or any portion thereof, for any other part of the Secured Obligations secured hereby, whether matured at the time or subsequently maturing; or

(b) take such other steps to protect and enforce Mortgagee's rights, whether by action, suit or proceeding in equity or at law for the specific performance of any covenant, condition or agreement in the Note, this Mortgage or any other Loan Document, or in aid of the execution of any power granted herein or in the Note, this Mortgage or any other Loan Document, or for any foreclosure hereunder, or for the enforcement of any other appropriate legal or equitable remedy or otherwise as Mortgagee may elect.

6.2 Appointment of Receiver; Application of Proceeds; Waiver of Right of Redemption; Etc.

6.2.1 Appointment of Receiver. During the continuance of an Event of Default, Mortgagee shall be entitled (and, to the extent permitted under the laws of the State of Ohio, without regard to the adequacy of any security for the Secured Obligations and without regard to the solvency of any person, partnership or entity liable for the payment thereof) to the appointment of a receiver or receivers of the Mortgaged Property and of all of the earnings, revenues, rents, issues, profits and income there from, and Mortgagor hereby consents to the appointment of such receiver and agrees that it will not oppose any such appointment; provided, however, that notwithstanding the appointment of any receiver as aforesaid, Mortgagee shall be entitled to retain possession and control of the Mortgaged Property. Such receiver shall have all of the powers and authority permitted by applicable law.

6.2.2 Application of Proceeds. The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by Mortgagee pursuant to this Mortgage, whether under the provisions of this Subsection or otherwise, shall be applied as follows:

First: To the payment of the actual costs and expenses of such sale or sales, including compensation to Mortgagee and the fees, charges and disbursements of its agents, and the charges, disbursements and reasonable fees of its counsel, and of any judicial or other proceedings wherein the same may be made, and of all reasonable expenses, liabilities and advances made or incurred by Mortgagee under this Mortgage, together with interest at the Default Rate on all reasonable advances made by Mortgagee, and of taxes, assessments or other charges, except any taxes, assessments or other charges subject to which the Mortgaged Property shall have been sold.

Second: To the payment of any actual reasonable expenses, charges, losses, indemnities, penalties, premiums (including, without limitation, Prepayment Premiums (as defined in the Note) and late payment premiums) and all other amounts due under the Loan Documents, excluding interest and principal.

22

4859-1371-1395, v. 2

Note.

**Third**:  To the payment of interest on the unpaid principal due under the

**Fourth**:  To the payment of principal due under the Note.

**Fifth**:  To the payment of all other Secured Obligations.

**Sixth**:  To the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same (including, if applicable, Mortgagor, any partner of Mortgagor or the affiliate of any of them).

6.2.3  **Purchase of Mortgaged Property**.  Mortgagee shall have the right to be a purchaser at any sale made under or by virtue of this Mortgage, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, and on so purchasing shall have the right to be credited upon the amount of the bid made therefor with the amount payable to Mortgagee out of the net proceeds of such sale. In the event of any such sale, the Secured Obligations, if not previously due, shall be and become immediately due and payable without demand or notice of any kind.

6.2.4  **Exemptions Waived**. Mortgagor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of a stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property, or any part thereof, whether enacted now or at any time hereafter in force, which may affect the covenants and terms of performance of this Mortgage, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; and Mortgagor hereby expressly waives all benefit and advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to Mortgagee, but to suffer and permit the execution of every right, power or remedy as though no such law or laws had been made or enacted. Mortgagor, for itself and all who claim under it, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshalled upon any sale or foreclosure hereunder.

6.2.5  **Recovery of Judgment**.

(A)  During the continuation of any Event of Default, Mortgagee shall be entitled and empowered to institute such actions or proceedings at law or in equity as it may consider advisable for the collection of the Secured Obligations, and may prosecute any such action or proceeding to judgment or final decree, and may enforce any such judgment or final decree against Mortgagor in any manner provided by law.  Mortgagee shall be entitled to recover judgment as aforesaid either before, after or during the pendency of any proceeding for the enforcement of any remedies provided for in the Note, the Loan Agreement, this Mortgage, or the other Loan Documents and the right of Mortgagee to recover judgment as aforesaid shall not

23

4859-1371-1395, v. 2

be affected by any sale hereunder, or by the passage or entry of a decree for the sale of the Mortgaged Property, or any part thereof, or by the enforcement of the provisions of the Note, this Mortgage, and the other Loan Documents or the foreclosure of the lien hereof. In the event of a sale of the Mortgaged Property, and of the application of the proceeds of sale, as in this Mortgage provided, to the payment of the Secured Obligations, Mortgagee, except as otherwise provided in the Note, shall be entitled to enforce payment of, and to receive all amounts then remaining due and unpaid with respect to the Secured Obligations, and shall be entitled to recover judgment for any portion of the Secured Obligations remaining unpaid, together with interest as provided in the Note. In case of proceedings against Mortgagor in insolvency or bankruptcy or any proceedings for its reorganization or involving the liquidation of its assets, then Mortgagee shall be entitled to prove the whole amount due on account of the Secured Obligations, without deducting therefrom any proceeds obtained from the sale of the whole or any part of the Mortgaged Property; provided, however, that in no case shall Mortgagee receive a greater amount than the total amount due on account of the Secured Obligations from the aggregate amount of the proceeds of the sale of the Mortgaged Property and the distribution from the estate of Mortgagor.

(B)  No recovery of any judgment upon the Mortgaged Property or upon any other property of Mortgagor shall affect, in any manner or to any extent, the lien of this Mortgage upon the Mortgaged Property, or any part thereof, or any liens, rights, powers or remedies of Mortgagee hereunder, but such liens, rights, powers and remedies of Mortgagee shall continue unimpaired as before.

6.2.6  Discontinuance of Proceedings. If Mortgagee shall commence any proceeding to enforce any right, power or remedy hereunder or under the Note or the other Loan Documents and such proceeding shall be discontinued or abandoned for any reason, then in every such case the parties shall be restored to their former positions and the rights, powers and remedies of Mortgagee shall continue as if no such proceeding had been commenced.

6.3  Priority of Mortgage Lien. Mortgagee, at Mortgagee's option, is authorized and empowered to do all things provided to be done by a mortgagee under Section 1311.14 of the Ohio Revised Code, and any present or future amendments or supplements thereto, for the protection of Mortgagee's interest in the Mortgaged Property.

6.4  Extensions Shall Not Effect Lien. It is agreed that if any extension or extensions be made of the time of payment of all or any part of the indebtedness secured by this Mortgage, or if any part of the Mortgaged Property be released from the lien hereof, including without limitation, the security interest granted hereunder, it shall not alter or affect the lien created by this Mortgage in favor of any junior encumbrancer, or purchaser, or any person acquiring an interest in said Mortgaged Property or any part thereof; it being the intention of the parties hereto to preserve this lien on the Mortgaged Property and all Improvements that may be placed thereon hereafter, prior to any liens that may be placed thereon or fixed, given or imposed by law thereon, after the execution of this Mortgage or prior to the rights of any subsequent purchaser of all or any part of the Mortgaged Property, notwithstanding any such extension or releases.

24

4859-1371-1395, v. 2

6.5     No Conditions Precedent to Exercise of Remedies. Mortgagor shall not be relieved of any obligation by reason of the failure of Mortgagee to comply with any request of Mortgagor or of any other person to take action to foreclose on this Mortgage or otherwise to enforce any provisions of the Note, this Mortgage or the other Loan Documents, or by reason of the release, regardless of consideration, of all or any part of the Mortgaged Property, or by reason of any agreement or stipulation between any subsequent owner of the Mortgaged Property and Mortgagee extending the time of payment or modifying the terms of the Note, this Mortgage or the other Loan Documents without first having obtained the consent of Mortgagor, and, in the latter event, Mortgagor shall continue to be liable to make payment according to the terms of any such extension or modification agreement, unless expressly released and discharged in writing by Mortgagee. Mortgagee shall not be required to proceed hereunder before proceeding against any other security held by Mortgagee for the payment of the Secured Obligations or for the performance by Mortgagor of all of its obligations under the Note, this Mortgage or any of the Loan Documents, nor shall Mortgagee be required to proceed against such other security before proceeding hereunder. Mortgagee shall be entitled to proceed hereunder and against such other security in such order and manner as it may elect and no such action by Mortgagee shall operate to preclude it from proceeding against any or all of any security at the same time or in any order.

6.6     No Merger. It is the intention of the parties hereto that if Mortgagee shall at any time hereafter acquire title to all or any portion of the Mortgaged Property, then, and until the Secured Obligations have been satisfied in full, the interest of Mortgagee hereunder and the lien of this Mortgage shall not merge or become merged in or with the estate and interest of Mortgagee as the holder and owner of title to all or any portion of the Mortgaged Property and that, until such payment, the estate of Mortgagee in the Mortgaged Property and the lien of this Mortgage and the interest of Mortgagee hereunder shall continue in full force and effect to the same extent as if Mortgagee had not acquired title to all or any portion of the Mortgaged Property.

6.7     Remedies Cumulative. The remedies specified in this Section shall be in addition to all other rights and remedies provided herein or in any other Loan Document and which Mortgagee may have at law or in equity and no single or partial exercise by Mortgagee of any right or remedy hereunder or under any other Loan Document or which Mortgagee may have at law or in equity shall exhaust the same or shall preclude any other or further exercise thereof or of any other right or remedy hereunder or under any other Loan Document or which Mortgagee may have at law or in equity, and every such right or remedy hereunder or under any other Loan Document or which Mortgagee may have at law or in equity may be exercised at any time and from time to time after the occurrence of an Event of Default.

6.8     Mortgagee's Performance of Mortgagor's Obligations. If Mortgagor shall fail timely to perform any of the covenants contained in this Mortgage, the Note or any other Loan Document, Mortgagee may make advances to perform the same on Mortgagor's behalf. Inaction of Mortgagee shall never be considered as a waiver of any right accruing to it on account of any Event of Default nor shall the provisions of this Section 6.8 or any exercise by Mortgagee of its rights hereunder prevent any default from constituting an Event of Default. Mortgagee, in making any payment hereby authorized (a) relating to Impositions, may do so according to any

25

bill, statement or estimate, without inquiry into the validity of any such Imposition; (b) for the purchase, discharge, compromise or settlement of any lien, may do so without inquiry as to the validity or amount of any claim for lien which may be asserted; or (c) in connection with the completion of construction or alterations, furnishing or equipping of the Improvements or the rental, operation or management of the Mortgaged Property or the payment of operating costs thereof, may do so in such amounts and to such persons as Mortgagee may deem appropriate. Nothing contained herein shall be construed to require Mortgagee to advance monies for any purpose. Mortgagee shall have the right, but not the obligation, to make Protective Advances with respect to the Mortgaged Property for the payment of taxes, assessments, insurance premiums, and costs incurred in the protection of the Property as contemplated by Section 5301.233 of the Ohio Revised Code, and such Protective Advances, together with interest thereon at the Default Rate from the date of each such advance until it is repaid in full, shall be secured by this Mortgage to the fullest extent and with the highest priority contemplated by said Section 5301.233.

## ARTICLE VII
## OPEN-END MORTGAGE

7.1 <u>Future Advances</u>. This Mortgage is an Open-End Mortgage under Section 5301.232 of the Ohio Revised Code and is intended to secure the unpaid balances of loan advances to be made under the Note or Loan Agreement after this Mortgage has been delivered to the appropriate county recorder's office for recordation, together with interest thereon as provided in the Note and Loan Agreement from the date of each such advance to the date it is repaid in full, to the fullest extent and with the highest priority contemplated by Section 5301.232 of the Ohio Revised Code. The maximum amount of the unpaid principal indebtedness secured hereby, exclusive of interest thereon, and exclusive of advances for the payment of taxes, assessments, insurance premiums or costs incurred for the protection of the Property, which may be outstanding at any time is Fifty Two Million and No/100 Dollars ($52,000,000.00). If and to the extent applicable, Mortgagor hereby waives any right it may have under Section 5301.232(c) of the Ohio Revised Code.

## ARTICLE VIII
## MISCELLANEOUS

8.1 <u>Enforceability</u>. In the event that any provision of this Mortgage, the Loan Agreement, the Note or any other Loan Document or the application thereof to Mortgagor or any circumstance in any jurisdiction governing this Mortgage, the Note or such Loan Document shall, to any extent, be invalid or unenforceable under any Law, such provision shall be deemed inoperative only to the extent that it may conflict therewith and shall be deemed modified to conform to such Law, and the remainder of this Mortgage, the Note or such Loan Document and the application of such invalid or unenforceable provision to parties, jurisdictions or circumstances other than to whom or to which it is held invalid or unenforceable shall not be affected thereby nor shall the same affect the validity or enforceability of any other provision of this Mortgage, the Note or such Loan Document.

26

4859-1371-1395, v. 2

8.2     Maximum Rate of Interest.   Notwithstanding any contrary provision of this Mortgage, in no event shall the aggregate of the interest payable hereunder or under the Note, the Loan Agreement, or any other Loan Document, or penalties or premiums for late payments, prepayment premiums, loan servicing fees, application fees, commitment fees, "points" or any other amounts, fees or charges which would under any applicable Law be deemed "interest" ever exceed the maximum amount of interest which under any applicable Law could be lawfully charged on the principal balance of the Note from time to time outstanding. In this connection, it is expressly stipulated and agreed that it is the intention of Mortgagee and Mortgagor in the execution and delivery of the Note, the Loan Agreement, this Mortgage, the Assignment of Leases, the Indemnity Agreement and any other Loan Document contractually to limit the maximum amounts charged to, contracted for with, or received from Mortgagor in connection with the Secured Obligations which would be deemed "interest" under any applicable Law to the maximum non-usurious amount of interest which would be permitted under such Law. In furtherance thereof, it is stipulated and agreed that none of the terms of this Mortgage, the Note, the Assignment of Leases, the Indemnity Agreement or any other Loan Document shall ever be construed to create a contract to pay for the use, forbearance or detention of money interest at a rate in excess of the maximum non-usurious interest rate permitted to be charged to, contracted for with, or received from Mortgagor by Mortgagee under any applicable Law; neither Mortgagor nor Guarantor, endorser or other parties now or hereafter becoming liable for the payment of the Secured Obligations shall ever be liable for interest in excess of the maximum non-usurious interest that under any applicable Law could be charged, contracted for or received from Mortgagor by Mortgagee; and the provisions of this Section shall be deemed to govern the maximum rate and amount of interest which may be paid under the Note, the Loan Agreement, the Indemnity Agreement, the Assignment of Leases and any other Loan Document, and shall control over all other provisions of this Mortgage, the Note, the Loan Agreement, the Assignment of Leases or any other Loan Document which might be in apparent conflict herewith. Specifically and without limiting the generality of the foregoing, it is expressly provided:

8.2.1   If and when any installment of the interest calculated under the Note and the Loan Agreement becomes due and the aggregate amount thereof, when added to the aggregate amount of any other amounts which constitute interest on the indebtedness evidenced thereby and which have been heretofore paid on said indebtedness, would be in excess of the maximum non-usurious amount of interest permitted by any applicable Law, in light of all discounts, payments or prepayments theretofore made on said indebtedness and presuming the Secured Obligations will be paid at their stated maturity date, then the aggregate amount of such interest installment shall be automatically reduced to the maximum sum, if any, which could lawfully be paid as interest on the principal balance of the Note on such date under such circumstances.

8.2.2   If under any circumstances the aggregate amounts paid on the Note, the Loan Agreement, this Mortgage, the Indemnity Agreement, the Assignment of Leases and any other Loan Document prior to and incident to final payment thereof include any amounts which under any applicable Law would be deemed interest and which would exceed the maximum non-usurious amount of interest which, under any applicable Law, could lawfully have been

27

collected on such indebtedness, Mortgagor and Mortgagee stipulate that such payment and collection will have been and will be deemed to have been the result of mathematical error on the part of both Mortgagor and Mortgagee, and the person or entity receiving such excess payment shall promptly refund the amount of such excess (to the extent only of the excess of such interest payments above the maximum non-usurious amount which could lawfully have been collected and retained under any applicable Law) upon discovery of such error by the person or entity receiving such payment or Notice thereof from the person or entity making such payment; and

8.2.3    All amounts paid or agreed to be paid in connection with the Secured Obligations which would under any applicable Law be deemed "interest" shall, to the extent permitted by such Law, be amortized, prorated, allocated and spread throughout the full term of the Note.

8.3    Notices.    All notices, demands, consents, approvals and other communications (collectively, "Notices") hereunder shall be in writing and shall be sent by hand, or by postage prepaid, certified or registered mail, return receipt requested, or by reputable overnight courier service, postage prepaid, addressed to the party to be notified as set forth below:

if to Mortgagee,

The Union Labor Life Insurance Company
8403 Colesville Road
Silver Spring, Maryland 20910-6331
Attn: Herbert A. Kolben, Senior Vice President, Real Estate
    Investment Group

with a copy to,

The Union Labor Life Insurance Company
1625 Eye Street, N.W.
Washington, D.C.  20006
Attn:  General Counsel

with an additional copy to:

Meyer, Unkovic & Scott LLP
535 Smithfield Street, Suite 1300
Pittsburgh, Pennsylvania 15222
Attn: Matthew D. Whitworth, Esq.
if to Mortgagor,

Statler Cleveland Holding, LLC
127 Public Square, 4000 Key Tower
Cleveland, Ohio 44114-1309
Attn: Frank T. Sinito

28

4859-1371-1395, v. 2

with a copy to:

Baker & Hostetler LLP
127 Public Square, Suite 2000
Cleveland, Ohio 44114
Attn: George Skupski, Esq.

Notices shall be deemed given when so delivered by hand, or if mailed, two (2) Business Days after mailing (or one (1) Business Day for overnight courier service), with failure to accept delivery constituting delivery for this purpose. Any party hereto may change the addresses for Notices set forth above by giving at least ten (10) days' prior Notice of such change in writing to the other party as aforesaid and otherwise in accordance with these provisions, provided that no Notices shall be required to be sent to more than three (3) entities. Any notice may be given on behalf of any party by its counsel.

8.4     No Release.  Mortgagor agrees that no other security, now existing or hereafter taken, for the Secured Obligations shall be impaired or affected in any manner by the execution hereof; no security subsequently taken by any holder of the Secured Obligations shall impair or affect in any manner the security given by this Mortgage; all security for the payment of the Secured Obligations shall be taken, considered, and held as cumulative; and the taking of additional security shall at no time release or impair any security by endorsement or otherwise previously given. Mortgagor further agrees that any part of the security herein described may be released without in any way altering, varying, or diminishing the force, effect, or lien of this Mortgage, or of any renewal or extension of said lien, and that this Mortgage shall continue as a first lien, assignment, and security interest on all the Mortgaged Property not expressly released until all Secured Obligations are fully discharged and paid.

8.5     Attorneys' Fees and Costs of Mortgagee.  Mortgagor agrees to pay, within ten (10) Business Days of demand of Mortgagee, all reasonable expenses incurred by Mortgagee, including without limitation attorneys' charges, disbursements and reasonable fees, in connection with the enforcement by Mortgagee of any of the Note, the Loan Agreement, this Mortgage, the Indemnity Agreement, the Assignment of Leases or any of the other Loan Documents.

8.6     Brokerage.  Mortgagor hereby indemnifies and holds harmless Mortgagee against all liability, cost and expense, including without limitation attorneys' charges, disbursements and reasonable fees, incurred in connection with any claims which may be asserted by any broker or finder or similar agent alleging to have dealt with Mortgagor in any of the transactions contemplated hereby, including but not limited to any fees or commissions due and payable to Berkadia Commercial Mortgage. in connection with the Loan.

8.7     Indemnification.  Mortgagor will protect, indemnify and save harmless Mortgagee from and against any and all actual liabilities, obligations, claims, damages, penalties, assessments, fines, causes of action and actual expenses (including without limitation attorneys' disbursements, charges and reasonable fees) imposed upon or incurred by or asserted against

29

4859-1371-1395, v. 2

Mortgagee or the Mortgaged Property or any of Mortgagee's interest therein, by reason of the execution of this Mortgage, the Note, the Loan Agreement, or any other Loan Document, or the consummation of the transactions contemplated hereby or thereby, or the occurrence or existence during or prior to the term of this Mortgage of any of the following:  (i) ownership by Mortgagor of any interest in the Mortgaged Property or receipt of any rent or other sum therefrom during any period when Mortgagor has not been excluded from possession; (ii) any accident, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property or any part thereof or the adjoining sidewalks, curbs, vaults and vault space, if any, and streets and ways during any period when Mortgagor has not been excluded from possession; (iii) any design, construction, operation, use, nonuse or condition of the Mortgaged Property or any part thereof or the adjoining sidewalks, curbs, vaults and vault space, if any, and streets and ways, including, without limitation, claims or penalties arising from violation of any requirement of law or insurance requirements as well as any claim based on any patent or latent defect, whether or not discoverable by Mortgagor, any claim as to which the insurance is inadequate, and any claim in respect of any adverse environmental impact or effect; (iv) any negligence or tortious act or omission on the part of Mortgagor or any of its agents, contractors, servants, employees, sublessees, licensees, guests or invitees; (v) any failure by Mortgagor to perform its obligations under this Mortgage, the Note, the Indemnity Agreement, the Assignment of Leases or any other Loan Document; or (vi) any claims arising from the alleged or actual breach of Mortgagor's obligations under Section 8.6 hereof, whether such claim proves true or false; provided, however, that the foregoing indemnity shall exclude any losses, costs or damages suffered or incurred by Mortgagee as a result of Mortgagee's gross negligence or willful misconduct.  Mortgagor further agrees that its obligations under this Section 8.7 shall include, but are not limited to, liability for damages resulting from the personal injury or death of an employee of Mortgagor, regardless of whether Mortgagor has paid the employee under the worker's compensation laws of the Jurisdiction, or other similar federal or state legislation for the protection of employees.  Mortgagor agrees that its obligations under this Section 8.7 shall include indemnifying Mortgagee for all attorney's charges, disbursements and fees, and all other actual expenses incurred by Mortgagee to enforce the terms of this Section.  Mortgagor's obligations under this Section are exclusive of, and in addition to, any and all insurance obligations which Mortgagor has under this Mortgage and any of its obligations under the Indemnity Agreement.  If any action or proceeding shall be commenced (including without limitation an action to foreclose this Mortgage or to collect the indebtedness secured hereby or to enforce Mortgagee's rights under the Note, the Indemnity Agreement, the Assignment of Leases or any other Loan Document) by Mortgagee or Mortgagor or any third party, to which action or proceeding Mortgagee is made a party by reason of the execution of this Mortgage, the Note, the Loan Agreement, the Assignment of Leases, the Indemnity Agreement, or any other Loan Document in which it becomes necessary to enforce, defend or uphold the lien of this Mortgage or Mortgagee's rights under the Note, all actual expenses incurred by Mortgagee in connection with any litigation to enforce, prosecute or defend the rights and lien created hereby or otherwise incurred in connection with any action or proceeding referred to in this Section (including without limitation attorneys' charges, disbursements and reasonable fees) shall be paid by Mortgagor to Mortgagee upon demand.  In case any action, suit or proceeding is brought against Mortgagee by reason of any such occurrence, Mortgagor, upon request of Mortgagee, will, at Mortgagor's sole cost and expense, resist and defend such action, suit or proceeding or cause the

30

same to be resisted or defended by counsel designated by Mortgagor and approved by Mortgagee, which approval shall not be unreasonably withheld or delayed.

8.8    Environmental Matters.  The provisions of the Indemnity Agreement, including without limitation all indemnifications, representations, warranties and covenants of Indemnitors (as that term is defined therein) set forth therein, are incorporated herein by this reference as if fully set forth herein.

8.9    Limitations on Recourse.  Reference is hereby made to Article 12 of the Loan Agreement entitled "Limitations on Recourse", which Article is incorporated herein by reference.

8.10   Reserved.

8.11   Reserved.

8.12   Effect of Extensions and Amendments.  If the payment of the Secured Obligations, or any part thereof, shall be extended or varied, or if any part of the security or guaranties therefor be released, all persons (including, without limitation Guarantor) now or at any time hereafter liable therefor, or interested in the Mortgaged Property, shall be held to assent to such extension, variation or release, and their liability, and the lien, and all provisions hereof, shall continue in full force and effect; the right of recourse against all such persons being expressly reserved by Mortgagee, notwithstanding any such extension, variation or release.  Any person, firm or corporation taking a junior mortgage or deed of trust or other Lien upon the Mortgaged Property or any part thereof or any interest therein, shall, without waiving any other limitations in this Mortgage on such Liens, take the said Lien subject to the rights of Mortgagee to amend, modify, extend or release the Note, this Mortgage or any other document or instrument evidencing, securing or guarantying the indebtedness secured hereby, in each case without obtaining the consent of the holder of such junior Lien and without the lien of this Mortgage losing its priority over the rights of any such junior Lien.

8.13   No Joint Venture.  Mortgagor acknowledges that the relationship between the parties is that of Mortgagor and Mortgagee and that in no event shall Mortgagee be deemed to be a partner or joint venturer with Mortgagor.  Mortgagee shall not be deemed to be such a partner or joint venturer by reason of its becoming a Mortgagee in possession or exercising any rights pursuant to this Mortgage or any other of the Loan Documents.

8.14   Funds Held in Accounts.  Mortgagor hereby agrees that Mortgagee shall have no liability for any investment losses or reduction in value which accrue or occur with respect to any amounts held by Mortgagee in any accounts hereunder for the benefit or account of Mortgagor or the Premises (such as insurance proceeds or partial condemnation awards) and any such losses shall be borne solely by Mortgagor except where such losses are caused by Mortgagee's gross negligence or willful misconduct.  In addition, Mortgagor agrees that all interest and/or other income on such funds shall for income tax purposes be deemed to belong to Mortgagor.

31

8.15   Expenses of Mortgagee.  Any reference herein to "actual expenses incurred by Mortgagee" shall be deemed to refer to actual out-of-pocket costs and expenses incurred by Mortgagee paid or payable to third parties (as opposed to Mortgagee's general overhead expenses).

8.16   Governing Law.   This Mortgage shall be governed by and construed in accordance with the laws of the State of Ohio, without regards to conflict or choice of laws principles, and any applicable laws of the United States of America.

8.17   Reserved.

8.18   Captions and Pronouns.  The captions and headings of the various sections of this Mortgage are for convenience only, and are not to be construed as confining or limiting in any way the scope or intent of the provisions hereof.  Whenever the context requires or permits, the singular shall include the plural, the plural shall include the singular, and the masculine, feminine and neuter shall be freely interchangeable.

8.19   Amendments, Waivers, Etc.  No amendment, modification, termination, or waiver of any provision of this Mortgage nor consent to any departure therefrom shall in any event be effective unless the same shall be in writing and signed by the party against which such action or waiver is sought to be charged, and then such action or waiver shall be effective only in the specific instance and for the specific purpose for which given or omitted.  No notice to or demand on Mortgagor in any case shall entitle Mortgagor to any other or further notice or demand in similar or other circumstances except as provided in this Mortgage.

8.20   Entire Agreement.  This Mortgage, the Loan Agreement, the Note, the Indemnity Agreement, the Assignment of Leases and the other Loan Documents embody the entire agreement between the parties hereto and supersede all prior agreements and understandings between them relating to the same subject matter.

8.21   Covenants Running With the Land; Successors and Assigns.  All of the grants, covenants, terms, provisions and conditions of this Mortgage shall run with the land, until such time as this Mortgage has been satisfied of record, and shall apply to and bind the successors and assigns of Mortgagor, and apply to and inure to the benefit of the successors and assigns of Mortgagee.  Mortgagee agrees to diligently record a satisfaction of this Mortgage, in accordance with the requirements of applicable Ohio law, upon the payment in full of the Secured Obligations.

**[SIGNATURES ON FOLLOWING PAGE]**

32

*[signature page to Open-End Mortgage,*
*Security Agreement and Fixture Filing]*

IN WITNESS WHEREOF, Mortgagor has executed this Mortgage as of date first set forth above.

STATLER CLEVELAND HOLDING, LLC, a Delaware limited liability company

By:   STATLER CLEVELAND, LLC, an Ohio limited liability company and the Sole Member of Statler Cleveland Holding, LLC

        By:   STATLER CLEVELAND INVESTMENT, LLC, an Ohio limited liability company and the Managing Member of Statler Cleveland, LLC

        By:_____
           Frank T. Sinito,
           Managing Member

STATE OF OHIO            )
                                          )   ss:

COUNTY OF CUYAHOGA      )

On this, the __13__ day of July, 2022, before me, a Notary Public, personally appeared **FRANK T. SINITO,** who acknowledged himself to be the Managing Member of **STATLER CLEVELAND INVESTMENT, LLC** , an Ohio limited liability company and the Managing Member of **STATLER CLEVELAND, LLC,** an Ohio limited liability company and the sole Member of **STATLER CLEVELAND HOLDING, LLC,** a Delaware limited liability company, and that he as such Managing Member, being authorized to do so, executed the foregoing instrument for the purposes therein contained, by signing the name of such entity by himself as such Managing Member.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal in the County and State aforesaid, the day and year first above written. No oath or affirmation was administered to the signer with regard to the notarial act.

JANE LUDWIG
Notary Public
State of Ohio
My Comm. Expires
October 25, 2025

_____
Notary Public

MY COMMISSION EXPIRES: October 25, 2025

## EXHIBIT "A"
## LEGAL DESCRIPTION

Property 1:
Parcel No. 1: (Fee Simple)

Situated in the City of Cleveland, County of Cuyahoga and State of Ohio:

And known as being part of Sublot Nos. 62 and 63 in John M. Woolsey's Subdivision of part of Original Two Acre Lot Nos. 156, 157 and 158, as shown by the recorded plat in Volume "N" of Deeds, Page 486 of Cuyahoga County Records, bounded and described as follows:

Beginning on the northerly line of Euclid Avenue (99.00 feet wide) at its intersection with the westerly line of East 12th Street (formerly Muirson Street) (60.40 feet wide);

Thence South 79° 35' 51" west along said northerly line of Euclid Avenue 168.82 feet to the southeasterly corner of land conveyed to the Trebmal Construction Co. by deed recorded in Volume 83-0853, Page 17 of Cuyahoga County Records;

Thence North 10° 35' 39" west along the easterly line of land so conveyed to the Trebmal Construction Co. and the northerly prolongation thereof, 150.00 feet to a point;

Thence North 79° 35' 42" east 64.80 feet to a point on the westerly line of land conveyed to The Cleveland Trust Company by deed dated May 31, 1927 and recorded in Volume 3567, Page 349 of Cuyahoga County Records;

Thence North 10° 36' 09" west along said line, 169.58 feet to a point in the southeasterly line of Hickory Court, N.E. (15.12 feet wide);

Thence North 55° 48' 21" east along the southeasterly line of Hickory Court, N.E., 113.48 feet to a point in the westerly line of aforementioned East 12th Street;

Thence South 10° 36' 09" east along the westerly line of said East 12th Street, 365.36 feet to the point of beginning and containing 1.0408 acres of land as calculated and described by The North Coast Engineering and Surveying Co., Inc., in November of 1998, be the same more or less, but subject to all legal highways.

NOTE: The above premises is further known as the Apartment Parcel in the Plat of Consolidation of Statler Arms, Inc. as shown by the recorded plat in Volume 301 of Maps, Page 78 of Cuyahoga County Records.

Parcel No. 2: Appurtenant Rights

A.    Together with a nonexclusive perpetual easement for the use of the elevator and stairwell in the garage; a nonexclusive perpetual easement for access to and the use of all underground facilities serving the building located on the apartment parcel including without limitation all utility lines, pipes, ducts, equipment and facilities located on, under or over the garage parcel; a nonexclusive perpetual easement for the use of the access and service drive which extends from Hickory Court through the rear portion of the garage; a nonexclusive and perpetual easement to perform all necessary maintenance to the apartment building wall and to make penetrations into and through the garage wall for the purpose of allowing direct access from the apartment building to each floor of the garage and a nonexclusive perpetual easement to the use of the air rights above the top level of the garage for the purpose of maintaining and repairing the portions of the wall of the apartment building which extend above the top level of the garage all as reserved in the Warranty Deed from Statler Arms, Inc., an Ohio corporation to Statler Arms Garage, Inc., an Ohio corporation, dated April 27, 1999, filed for record September 21, 1999, and being Cuyahoga County Recorder's AFN 199909210866.

B.    Together with a License Agreement for Use of Ballroom by and between Statler Arms Garage, Inc., an Ohio corporation ("Original Licensor"), and Statler Arms, Inc., an Ohio corporation ("Original Licensee"), dated August 13, 1999, filed for record September 21, 1999, and being Cuyahoga County Recorder's AFN 199909210869; as assigned by Original Licensee to PAMI Statler Arms, LLC, a Delaware limited liability company ("PAMI"), by Assignment and Assumption of License Agreements, dated May 8, 2006, filed for record May 10, 2006, and being Cuyahoga County Recorder's AFN 200605100708; as modified by Amendment of License Agreement and Stipulation Settlement, dated September 23, 2008, filed for record June 3, 2011 as Instrument No. 201106030167 of Cuyahoga County, Ohio records; as assigned by PAMI to Statler Arms L/CAL LLC, a Delaware limited liability company ("L/CAL"), by unrecorded Assignment and Assumption of License Agreements, dated May 23, 2012; as consented to by HH Cleveland Statler L.P., an Ohio limited partnership ("Licensor"), successor in interest to Original Licensor, by Consent to Assignment and Assumption of License Agreements, dated December 16, 2016, filed for record December 28, 2016 as Instrument No. 201612280380 of Cuyahoga County, Ohio records; as consented to by Licensor, by unrecorded Consent to Assignment and Assumption of License Agreements, dated November 29, 2017; as assigned by L/CAL to Statler Cleveland Holding, LLC, a Delaware limited liability company ("Licensee"), by Assignment and Assumption of License Agreements dated January 30, 2018 and filed in Cuyahoga County, Ohio records as Instrument No. 201801300501.

C.    Together with a License Agreement for Use of Parking Spaces in Garage by and between Statler Arms Garage, Inc., an Ohio corporation ("Original Licensor"), and Statler Arms, Inc., an Ohio corporation ("Original Licensee"), dated August 13, 1999, filed for record September 21,

1999, and being Cuyahoga County Recorder's AFN 199909210870, as assigned by Original Licensee to PAMI Statler Arms, LLC, a Delaware limited liability company ("PAMI"), by Assignment and Assumption of License Agreements, dated May 8, 2006, filed for record May 10, 2006, and being Cuyahoga County Recorder's AFN 200605100708; as modified by Amendment of License Agreement and Stipulation Settlement, dated September 23, 2008, filed for record June 3, 2011 as Instrument No. 201106030167 of Cuyahoga County, Ohio records; as assigned by PAMI to Statler Arms L/CAL LLC, a Delaware limited liability company ("L/CAL"), by unrecorded Assignment and Assumption of License Agreements, dated May 23, 2012; as consented to by HH Cleveland Statler L.P., an Ohio limited partnership ("Licensor"), successor in interest to Original Licensor, by Consent to Assignment and Assumption of License Agreements, dated December 16, 2016, filed for record December 28, 2016 as Instrument No. 201612280380 of Cuyahoga County, Ohio records; as consented to by Licensor, by unrecorded Consent to Assignment and Assumption of License Agreements, dated November 29, 2017; as assigned by L/CAL to Statler Cleveland Holding, LLC, a Delaware limited liability company ("Licensee"), by Assignment and Assumption of License Agreements dated January 30, 2018 and filed in Cuyahoga County, Ohio records as Instrument No. 201801300501.

D.    Together with the right to construct a hoist as set forth in City of Cleveland Ordinance No. 107802.

## EXHIBIT B

### PERMITTED EXCEPTIONS

1.      Liens for taxes, assessments or governmental charges or levies on such property if the same shall not at the time be delinquent or thereafter can be paid without penalty, or are being contested in good faith and by appropriate proceedings and for which adequate reserves shall have been set aside on the books of Mortgagor.

2.      Liens, leases, clouds, easements, contracts, commitments and encumbrances existing on the date hereof affecting the Mortgaged Property and listed in Schedule B, Part 1 of that certain Pro-Forma Title Insurance Policy prepared by Fidelity National Title Insurance Company and identified as File Number 22-OH-8346.

3.      Any municipal lien, utility lien, mechanics' lien, materialmen's lien, or judgment lien against the Mortgaged Property if bonded off, released of record, or otherwise remedied to Mortgagee's reasonable satisfaction within sixty (60) days after the earlier of the date Mortgagor has actual notice or constructive notice of the existence of such lien.