# EXHIBIT D



CUYAHOGA COUNTY
OFFICE OF FISCAL OFFICERS - 16
MORT 7/18/2022 3:17:15 PM
**202207180579**

Drafted by, and upon recording,
please return to:

Matthew D. Whitworth, Esquire
Meyer, Unkovic & Scott LLP
535 Smithfield Street, Suite 1300
Pittsburgh, PA 15222

(Space above reserved for recording)

| | |
|---|---|
| Title of Document: | Assignment of Rents, Leases and Profits |
| Date: | July 15, 2022 |
| Assignor: | **STATLER CLEVELAND HOLDING, LLC**, a Delaware limited liability company |
| Assignor's Address: | 127 Public Square, 4000 Key Tower Cleveland, Ohio 44114-1309 |
| Assignee: | **THE UNION LABOR LIFE INSURANCE COMPANY**, a Maryland corporation, on behalf of one or more of its Separate Accounts |
| Assignee's Address: | 8403 Colesville Road Silver Spring, Maryland 20910-6331 |
| Legal Description: | See Exhibit "A" attached hereto and made a part hereof |

The information provided in this cover page shall not be construed as either modifying or supplementing the substantive provisions of the attached Assignment of Rents, Leases and Profits. In the event of a conflict between the provisions of the Assignment of Rents, Leases and Profits and the provisions of this cover page, the attached Assignment of Rents, Leases and Profits shall prevail and control.

## ASSIGNMENT OF RENTS, LEASES AND PROFITS

THIS ASSIGNMENT OF RENTS, LEASES AND PROFITS (this "Assignment") is made as of the 15th day of July, 2022, by **STATLER CLEVELAND HOLDING, LLC**, a Delaware limited liability company (hereinafter referred to as "Assignor"), in favor of **THE UNION LABOR LIFE INSURANCE COMPANY**, a Maryland corporation, on behalf of one or more of its Separate Accounts (hereinafter referred to as "Assignee").

WITNESSETH:

WHEREAS, Assignor is justly indebted to Assignee and in evidence of such debt has executed and delivered to Assignee that certain Promissory Note of even date herewith (hereinafter referred to as the "Note") in the principal amount of Fifty Two Million and No/100 Dollars ($52,000,000.00) (hereinafter referred to as the "Loan"); and

WHEREAS, the Loan is made in accordance with the terms and conditions of that certain Loan Agreement of even date herewith by and between Assignor and Assignee (hereinafter referred to as the "Loan Agreement"); and

WHEREAS, the Loan is secured by, inter alia, that certain Open-End Mortgage, Security Agreement and Fixture Filing of even date herewith from Assignor to Assignee (hereinafter referred to as the "Mortgage"), covering that certain parcel of real property and the improvements thereon erected or to be erected situate in the City of Cleveland, Cuyahoga County, Ohio, as more particularly described on Exhibit "A" attached hereto and made a part hereof (hereinafter collectively referred to as the "Premises"); and

WHEREAS, the Note, the Loan Agreement, the Mortgage and all other documents evidencing and/or securing the Loan are hereinafter collectively referred to as the "Loan Documents"; and

WHEREAS, as a condition to making the Loan, Assignee has required that Assignor execute and deliver this Assignment to and in favor of Assignee.

NOW, THEREFORE, in consideration of the Loan, Assignor hereby grants, transfers and assigns unto Assignee, its successors and assigns, all the right, title and interest of Assignor in and to all of the rents, issues, profits, revenues, royalties, rights, benefits and all license fees, concession fees, charges, rights, benefits and all other payments of any kind (including, without limitation, security deposits to the extent they may be lawfully assigned) and all payments made on account of operating expenses and real estate taxes and other similar items whether categorized as rent, additional rent or otherwise (hereinafter collectively referred to as the "Rents") of and from the Premises (including, but not limited to, the use, occupancy or utilization thereof), and in and to all leases of all or part of the Premises, now existing, or

4853-7684-0483, v. 3

hereafter made, executed or delivered, whether oral or written, together with all renewals, extensions or modifications thereof as may have been, or may from time to time hereafter, be modified or extended, and any guaranties of the Lessees' (as hereinafter defined) obligations under any thereof, as may hereafter be amended or modified (all of said leases, together with all such guarantees, modifications and extensions being hereinafter collectively referred to as the "Leases"). Assignor further agrees to execute assignments of any future Leases affecting all or any part of the Premises and assignments of any guaranties made in connection therewith. Assignee and Assignor intend that the assignments contained in this paragraph be absolute, unconditional and presently effective.

All lessees under the Leases (collectively, "Lessees" and individually, "Lessee") shall pay the Rents to Assignee upon demand without further inquiry, and payment to Assignee shall be a full defense by any such Lessee to any claim for such Rents by Assignor, regardless of any defenses or counterclaims Assignor may have against Assignee. Until such demand is made (which may only be made following the occurrence and during the continuance of an Event of Default), each Lessee may pay rents directly to Assignor, who is authorized to collect the Rents and otherwise act as landlord under the Leases, provided, however, Assignor shall not collect Rents for more than one (1) month in advance, except for customary deposits as security for the performance of the Lessees thereunder, but after demand, Assignor covenants to hold all Rents so paid in trust for the use and benefit of Assignee. The term "Leases" shall include all subleases of all or any portion of the Premises and any license, concession or other agreement with respect to the use, occupancy or utilization of all or any portion of the Premises. Notwithstanding any provision contained herein to the contrary, it shall never be necessary for Assignee to institute legal proceedings of any kind whatsoever to enforce the provisions of this Assignment.

1.      The occurrence of an Event of Default under any of the Loan Documents shall constitute an Event of Default hereunder. Upon the occurrence and during the continuance of an Event of Default, this Assignment shall constitute a direction and full authority to each Lessee under any Lease and each guarantor of any Lease to pay all Rents to Assignee without proof of the default relied upon. Assignor hereby irrevocably authorizes each Lessee and guarantor to rely upon and comply with any notice or demand by Assignee for the payment to Assignee of any Rents due or to become due.

2.      Assignor warrants, to the best of its knowledge, as to each Lease now or hereafter covering all or any part of the Premises unless Assignee has been otherwise advised by written notice from Assignor:

(a)      that each Lease is in full force and effect;

(b)      that no material term of any Lease has been altered, modified or changed (other than as permitted under Section 8.14 of the Loan Agreement);

(c)      that no material default exists on the part of Assignor or, to Assignor's knowledge and except as otherwise disclosed to Assignee, any Lessee under any Lease;

3

(d)     that to Assignor's knowledge and except as otherwise disclosed to Assignee, that there are no events which with the passage of time, or the giving of notice would create a material default under any Lease;

(e)     that no rent in excess of one (1) month's rent has been collected in advance under any Lease;

(f)     that no Lease or any interest therein is currently assigned or pledged by Assignor;

(g)     that no Lessee under any Lease has any defense, setoff or counterclaim against Assignor; and

(h)     that all rent due to date under each Lease has been collected and no concession has been granted to any Lessee in the form of a waiver, release, reduction, discount or other alteration of rent due or to become due.

3.     Assignor agrees with Assignee as follows:

(a)     If the Lease provides for a security deposit paid by the Lessee to Assignor, this Assignment transfers to Assignee all of Assignor's right, title and interest in and to the security deposit to the extent permitted by law; provided that Assignor shall have the right to retain said security deposit so long as no Event of Default has occurred and is continuing under this Assignment or the Mortgage; and provided further that Assignee shall have no obligation to the Lessee with respect to such security deposit unless and until Assignee comes into actual possession and control of said deposit.

(b)     Each Lease shall remain in full force and effect despite any merger of the interest of Assignor and any Lessee thereunder.  Assignor shall not transfer or convey fee title to the leased premises to any Lessee without the prior written consent of Assignee.  In no event shall any such transfer or conveyance operate to release or relieve Assignor of any liability to Assignee unless Assignee specifically agrees otherwise in writing.

(c)     Subject to Section 8.14 of the Loan Agreement, Assignor shall not terminate any Lease (except pursuant to the terms of the Lease upon a default by the Lessee or with respect to Residential Leases, in the ordinary course of business), or modify or amend any Commercial Lease (as that term is defined in the Loan Agreement), or grant any concessions in connection therewith or accept a surrender thereof, without the prior written consent of Assignee.

(d)     Assignor shall not collect any Rents more than thirty (30) days in advance of the date on which they become due under the terms of any Lease.

(e)     Assignor shall not discount any future accruing Rents.

(f)     To the extent that Assignor has consent rights under a Commercial Lease, Assignor shall not consent to any assignment of any such Commercial Lease, or any subletting

4

thereunder, whether or not in accordance with its terms, without the prior written consent of Assignee, such consent not to be unreasonable withheld, conditioned or delayed, and, to the extent that Assignor has consent rights under a Commercial Lease, Assignor shall not consent to, or permit, an alteration of, or addition to, the Premises by any Lessee under such Commercial Lease without the prior consent of Assignee, such consent not to be unreasonable withheld, conditioned or delayed.

(g)     Assignor shall not further assign, pledge, hypothecate, or otherwise encumber any of the Leases or Rents or any interest therein or suffer or permit any assignment, pledge, hypothecation or encumbrance of any of the Leases or Rents or any interest therein to occur by operation of law.

(h)     Assignor shall not request, consent to, agree to or accept a subordination of any Lease to any other mortgage, deed of trust or other encumbrance, or any other lease, now or hereafter affecting the Premises or any part thereof, or suffer or permit conversion of any Commercial Lease to a sublease.

(i)     Assignor shall faithfully perform and discharge all obligations of the lessor under the Leases and shall enforce the terms, covenants and conditions to be performed by all Lessees under, and other parties to, the Leases in accordance with prudent commercial business practices.  Assignor shall give prompt written notice to Assignee of any notice of Assignor's default received from any Lessee or any other person and furnish Assignee with a complete copy of said notice.  Assignor shall appear in and defend, at no cost to Assignee, any action or proceeding arising under, or in any manner connected with, any Lease.  If requested by Assignee, Assignor shall enforce each Lease and all remedies available to Assignor against the Lessee in the case of material default under the Lease by the Lessee.

(j)     Assignor shall give Assignee an executed counterpart of each and every executed Commercial Lease then affecting all or any part of the Premises, and, upon request by Assignee, Assignor shall give Assignee an executed counterpart of all Residential Leases (as that term is defined in the Loan Agreement) affecting any part of the Premises.  Assignor shall not enter into any new Lease without the prior written consent of Assignee; provided, however, that Assignee's prior written consent shall not be required for Residential Leases entered into by Assignor in the ordinary course of business.  Without the prior written approval of Assignee, Assignor shall not enter into any amendment, extension or supplement of any existing Lease, provided, however that Assignor may execute amendments to existing Residential Leases in the ordinary course of business.

(k)     Assignor shall manage the Premises through its own personnel or a related entity, and shall not hire, retain or contract with any third party for property management services without the prior written approval by Assignee.

(l)     Assignor, promptly upon request by Assignee, shall request duly executed estoppel certificates from any one or more Lessees under Commercial Leases as required by Assignee attesting to such facts regarding the Commercial Lease as Assignee may require, including but not limited to attestations that each Lease covered thereby is in full force and effect

5

4853-7684-0483, v. 3

with no defaults thereunder on the part of any party, that no rental has been paid more than one month in advance, and that the Lessee claims no defense or offset against the full and timely performance of its obligations under such Commercial Lease.

(m)    Nothing herein shall be construed to impose any liability or obligation on Assignee under or with respect to any Lease until such time as Assignee has taken possession and/or control of the Premises. Assignor shall indemnify and hold Assignee harmless from and against any and all liabilities, losses and damages which Assignee may incur under any Lease or by reason of this Assignment, and of and from any and all claims and demands whatsoever which may be asserted against Assignee by reason of any alleged obligations to be performed or discharged by Assignee under any Lease or this Assignment, except to the extent that such liabilities, losses or damages resulted from the gross negligence or willful misconduct of Assignee. Should Assignee incur any liability, loss or damage under any Lease or under or by reason of this Assignment, except as a result of Assignee's gross negligence or willful misconduct, Assignor shall immediately upon demand reimburse Assignee for the amount thereof together with all reasonable costs and expenses and reasonable attorneys' fees incurred by Assignee. All of the foregoing sums shall bear interest until paid at the Applicable Interest Rate or the Default Rate, as applicable (as said terms are defined in the Loan Agreement). Any Rents collected by Assignee may be applied by Assignee, in its discretion, in satisfaction of any such liability, loss, damage, claim, demand, cost, expense or fees.

(n)    Upon request by Assignee, Assignor shall cause each Lessee under a Commercial Lease to execute and deliver to Assignee an agreement, reasonably satisfactory in form and substance to Assignee, under which (i) the Lessee shall subordinate its interest in such Commercial Lease to this Assignment and the Mortgage, and (ii) the Lessee shall, upon request of Assignee or any successor of Assignee's interest, attorn to, and become the tenant of, such successor without changing the terms or other provisions of such Lessee's Commercial Lease.

(o)    To the extent such financial statements are required to be provided by a Lessee under a Commercial Lease, or to the extent any such Lessee under a Commercial Lease otherwise actually provides such information to Assignor, Assignor shall cause each Lessee under a Commercial Lease to deliver to Assignee, within ninety (90) days of the close of such Lessee's fiscal year, its balance sheets and statements of profit and loss setting forth, in comparative form, figures for the preceding year.

4.    Assignor hereby grants to Assignee the following rights:

(a)    Assignee shall be deemed to be the creditor of each Lessee in respect of any assignments for the benefit of creditors and any bankruptcy, arrangement, reorganization, insolvency, dissolution, receivership or other debtor-relief proceedings affecting such Lessee, without obligation on the part of Assignee, however, to file timely claims in such proceedings or otherwise pursue creditor's rights therein.

(b)    Assignee shall have the right to assign Assignor's right, title and interest in the Leases to any subsequent holder of the Mortgage or any participating interest therein or to

any person acquiring title to all or any part of the Premises through foreclosure or otherwise. Any subsequent assignee shall have all the rights and powers herein provided to Assignee.

(c)     Assignee shall have the right (but not the obligation), upon any failure of Assignor to perform any of its agreements hereunder, to take any action as Assignee may deem necessary or appropriate to protect its security, including but not limited to appearing in any action or proceeding and performing any obligations of the lessor under any Lease; and Assignor agrees to pay, on demand, all costs and expenses, including without limitation reasonable attorneys' fees, incurred by Assignee in connection therewith, together with interest thereon at the Default Rate.

(d)     Upon the occurrence and during the continuance of an Event of Default by Assignor under this Assignment or under any other Loan Document, in addition to its rights and remedies under subsections (a) through (c) of this Section and the Loan Documents and in addition to any rights and remedies available to Assignee at law or in equity, Assignee may, either in its own name or as attorney-in-fact of Assignor, subject to the applicable terms of the Leases, make, enforce, modify or cancel any of the Leases; obtain tenants for and evict tenants from the Premises; demand, fix and modify the Rents and other charges from the Premises; institute all legal proceedings (including summary proceedings) for the collection of all Rents and other charges; obtain possession of the Premises or any part thereof, or enforce any other rights theretofore exercisable by Assignor; relet the Premises, or any portion thereof, and collect the Rents under any such new Leases; manage and operate the Premises or engage a managing agent for the management and operation of the Premises; and do any and all other acts which Assignee, in its sole and absolute discretion, deems proper to protect the security hereof, including, without limitation, acting under any different or additional remedies provided for herein or in the Loan Documents; and, with or without taking possession of the Premises, in Assignor's own name, sue for or otherwise collect and receive all Rents and other charges, including those past due and unpaid, and apply the same, less the reasonable costs and expenses of operation and collection, including reasonable attorneys' fees, to the payment of the Secured Obligations (as that term is defined in the Mortgage), whether then matured or not, until the same shall have been paid in full; provided, however, that any balance remaining after the Secured Obligations shall have been paid in full shall be turned over to Assignor or such other person as may lawfully be entitled thereto.  Neither the entry upon and taking possession of the Premises, nor the collection and application of the Rents or other charges thereof as aforesaid, nor any other action taken by Assignor in connection therewith, shall cure or waive any default hereunder or any Event of Default under the Mortgage or waive or modify any notice thereof or notice of acceleration of the Secured Obligations theretofore given by Assignee.  Assignor hereby releases all claims against Assignee arising out of the management, operation and maintenance of the Premises or any portion thereof except as specifically provided to the contrary in any of the other Loan Documents or except resulting from the gross negligence or willful misconduct of Assignee.  In no event shall Assignee be accountable for more monies than it actually receives from the Premises, or shall Assignee be liable for any failure to collect the Rents; and the right to determine the method of collection and the extent to which enforcement of collection shall be prosecuted is reserved to the sole but reasonable discretion of Assignee.

7

4853-7684-0483, v. 3

If an Event of Default under this Assignment or under the Loan Documents shall have occurred and be continuing, Assignor agrees that it will facilitate in every reasonable way the collection by Assignee of the Rents as Assignee is entitled to collect pursuant to the terms of this Assignment and the Mortgage, and will, at the written request of Assignee, execute a written notice and deliver the same to each Lessee directing said Lessee to pay rent to Assignee. Additionally, notice in writing by Assignee to any Lessee under a Lease advising them that Assignor has defaulted hereunder or an Event of Default has occurred, and requesting that all future payments of rent, additional rent or other charges under such Lease be made to Assignee (or its agent) shall be construed as conclusive authority to such Lessee that such payments are to be made to Assignee (or its agent), and such Lessee shall be fully protected in making such payments to Assignee (or its agent); and Assignor hereby irrevocably constitutes and appoints Assignee the attorney-in-fact and agent of Assignor, coupled with an interest, for the purpose of endorsing the consent of Assignor on any such notice. In addition to any other rights which Assignee may have herein, following the occurrence and during the continuance of an Event of Default, Assignee may, at its option, require Assignor to pay monthly in advance to Assignee (or its agent) the fair and reasonable rental value for the use and occupancy of the Premises (or such portion thereof as may be in possession of Assignor). It is understood and agreed that neither the foregoing assignment of Rents to Assignee nor the exercise by Assignee of any of its rights or remedies under this Section shall be deemed to constitute Assignee a mortgagee-in-possession or otherwise responsible or liable in any manner (other than arising from its gross negligence or wrongful acts) with respect to the Premises or the use, occupancy, enjoyment or operation of all or any portion of the Premises.

(e)     In the exercise of the powers herein granted to Assignee, no liability shall be asserted or enforced against Assignee other than for gross negligence or willful misconduct, all such liability being hereby expressly waived and released by Assignor. Assignee shall not be obligated to perform or discharge any obligation, duty or liability under the Leases or under or by reason of this Assignment or the Mortgage and Assignor shall and does agree to indemnify and hold Assignee harmless from and against any and all liability, loss or damage which it might incur under the Leases or under or by reason of this Assignment or the Loan Documents and any and all claims and demands whatsoever which may be asserted against Assignee by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in the Leases. Should Assignee incur any such liability, loss or damage under the Leases, or under or by reason of this Assignment or the Mortgage, or in the defense of any such claims or demands, the amount thereof, including costs, expenses and reasonable attorneys' fees and disbursements, shall be secured hereby and by the Mortgage, and Assignor shall reimburse Assignee therefor immediately upon demand. The waiver of Assignee's liability and Assignor's indemnification of Assignee shall not apply, however, to liabilities of Assignee arising out of Assignee's actions with respect to the Leases following the taking of title to the Premises and in Assignor's interest in the Leases following foreclosure of the lien of the Mortgage or the delivery of a deed or conveyance in lieu of foreclosure.

5.     This Assignment is intended to be supplementary to and not in substitution for or in derogation of any assignment of Leases or Rents contained in the Mortgage or in any other Loan Document. Failure of Assignee to avail itself of any terms, covenants or conditions of this Assignment for any period of time or for any reason shall not constitute a waiver thereof.

4853-7684-0483, v. 3

6.     Notwithstanding any future modification of the terms of the Secured Obligations or the Mortgage or any other Loan Document, this Assignment and the rights and benefits hereby assigned and granted shall continue in favor of Assignee in accordance with the terms of this Assignment.

7.     This Assignment shall be binding upon and inure to the benefit of the respective successors and assigns of the parties hereto (including without limitation, in the case of Assignee, any third parties now or hereafter acquiring any interest in the Secured Obligations or any part thereof, whether by virtue of assignment, participation or otherwise).  The words "Assignor," "Assignee" and "Lessee," wherever used herein, shall include the persons and entities named herein or in any Lease and designated as such and their respective heirs, legal representatives, successors and assigns, provided that any action taken by the named Assignee or any successor, designated as such by an instrument recorded in the official records of the county in which the Premises is located referring to this Assignment, shall be sufficient for all purposes notwithstanding that Assignee may have theretofore assigned or participated any interest in the Secured Obligations to a third party.  All words and phrases shall be taken to include the singular or plural number, and the masculine, feminine or neuter gender, as may fit the case.

8.     Any change, amendment, modification, abridgment, cancellation, or discharge of this Assignment or any term or provision hereof shall be invalid without the written consent of Assignee.

9.     Upon satisfaction in full of all of the Secured Obligations, as evidenced by a recorded satisfaction or release of the Mortgage, this Assignment shall be void and of no further effect.

10.     All notices, demands, consents, approvals and other communications (collectively, "Notices") hereunder shall be in writing and shall be sent by hand, or by postage prepaid, certified or registered mail, return receipt requested, or by reputable overnight courier service, postage prepaid, addressed to the party to be notified as set forth below:

if to Assignee,

The Union Labor Life Insurance Company
8403 Colesville Road
Silver Spring, Maryland 20910-6331
Attn: Herbert A. Kolben, Senior Vice President, Real Estate
    Investment Group

with a copy to,

The Union Labor Life Insurance Company
1625 Eye Street, N.W.
Washington, D.C.  20006
Attn:  General Counsel

9

4853-7684-0483, v. 3

with an additional copy to:

Meyer, Unkovic & Scott LLP
535 Smithfield Street, Suite 1300
Pittsburgh, Pennsylvania 15222
Attn: Matthew D. Whitworth, Esq.

if to Assignor,

Statler Cleveland Holding, LLC
127 Public Square, 4000 Key Tower
Cleveland, Ohio 44114-1309
Attn: Frank T. Sinito

with a copy to:

Baker & Hostetler LLP
127 Public Square, Suite 2000
Cleveland, Ohio 44114
Attn: George Skupski, Esq.

Notices shall be deemed given when delivered by hand, or if mailed, two (2) Business Days after mailing (or one (1) Business Day for overnight courier service), with failure to accept delivery constituting delivery for this purpose.  Any party hereto may change the addresses for Notices set forth above by giving at least ten (10) days' prior Notice of such change in writing to the other party as aforesaid and otherwise in accordance with these provisions, provided that no Notices shall be required to be sent to more than three (3) entities.  Any notice may be given on behalf of any party by its counsel.

11.     This Assignment and the rights and obligations of the parties hereunder shall in all respects be governed by, and construed and enforced in accordance with, the laws of the State of Ohio, without regards to conflict or choice of law principles.  Assignor hereby irrevocably submits to the non-exclusive jurisdiction of any State or Federal court sitting in the State of Ohio over any suit, action or proceeding arising out of or relating to this Assignment.

12.     Nothing contained in this Assignment and no act done or omitted by Assignee pursuant to the powers and rights granted hereunder shall be deemed to be a waiver by Assignee of any of its rights and remedies under the Mortgage and other Loan Documents.  This Assignment is made and accepted without prejudice to any such rights and remedies possessed by Assignee to collect the principal sum, interest and all other indebtedness or amounts secured hereby or by the Mortgage and to enforce any other security therefor held by it.  Said rights and remedies may be exercised by Assignee either prior to, simultaneously with, or subsequent to any action taken by it hereunder.

4853-7684-0483, v. 3

13.    Notwithstanding anything within this Assignment to the contrary, no right bestowed upon Assignee hereunder may be construed as requiring Assignee to exercise such right, and the failure to exercise such right shall not constitute a waiver.

14.    Reference is hereby made to Article 12 of the Loan Agreement entitled "Limitations on Recourse," which Article is incorporated herein by reference.

15.    <u>Reserved</u>.

16.    Any sums collected that remain in the possession of the receiver at the termination of the receivership shall, in the event that termination of the receivership is due to the reinstatement of the mortgage debt or redemption of the Premises by the Assignor, be paid to the Assignor.  Any net sums remaining shall first be applied and paid to Assignee to satisfy any deficiency remaining after the foreclosure sale and any balance paid to the purchaser at the foreclosure sale (or its assigns).

17.    A receiver appointed pursuant hereto shall have the authority granted to it by Ohio laws, and without limitation shall be entitled to enter upon, take possession of, manage and operate the Premises; make, enforce, modify and accept the surrender of Leases; obtain or evict tenants; fix or modify Rents and do any acts which the receiver deems proper to protect the Premises; sue for or otherwise collect and receive all Rents, including those past due and unpaid, and enforce all rights of Assignor under the Leases; make any repairs or alterations and improvements to the Premises or any part thereof which the receiver deems proper; order, purchase, cancel, modify, amend and/or in any and all ways control and deal with any and all policies of insurance of any kind and all kinds now or hereafter on or in connection with the whole or any part of the Premises and to adjust any loss of damage thereunder; adjust, bring suit at law or in equity for, settle or otherwise deal with, any taking of any or all of the Premises for public purposes or any claim for real or alleged harm or damage to said Premises and execute and/or render any and all instruments deemed by the receiver to be necessary or appropriate in connection therewith; and adjust, settle or otherwise deal with any real estate tax abatements and execute and/or render any and all instruments deemed by the receiver to be necessary or appropriate in connection therewith.

19.    In addition to its being, but without in any way limiting or impairing its validity as, an assignment of leases and rents, this Assignment shall also constitute a Security Agreement under the Uniform Commercial Code as enacted in the State of Ohio, creating in favor of Assignee, until the Secured Obligations are fully paid, a first and prior security interest in the Leases and the Rents.  Accordingly, Assignor hereby acknowledges to Assignee that Assignee shall have, in addition to all other rights and remedies afforded to it herein or in the Note, the Loan Agreement and the Mortgage, all rights and remedies afforded to secured parties by the Uniform Commercial Code.  Assignor agrees that Assignee may file such financing statements and other assurances as Assignee may reasonably request to create, perfect and preserve the security interest herein created and shall cause such financing statements and assurances to be filed or recorded as Assignee may reasonably request.

**[SIGNATURES ON FOLLOWING PAGE]**

11

4853-7684-0483, v. 3

*[signature page to Assignments of Rents, Leases and Profits]*

IN WITNESS WHEREOF, Assignor has executed this Assignment as of the day and year set forth above.

STATLER CLEVELAND HOLDING, LLC, a Delaware limited liability company

By: STATLER CLEVELAND, LLC, an Ohio limited liability company and the Sole Member of Statler Cleveland Holding, LLC

By: STATLER CLEVELAND INVESTMENT, LLC, an Ohio limited liability company and the Managing Member of Statler Cleveland, LLC

By: _____

Frank T. Sinito,
Managing Member

STATE OF OHIO                                    )
                                                 )   ss:
COUNTY OF CUYAHOGA                               )

On this, the __13__ day of July, 2022, before me, a Notary Public, personally appeared **FRANK T. SINITO,** who acknowledged himself to be the Managing Member of **STATLER CLEVELAND INVESTMENT, LLC,** an Ohio limited liability company and the Managing Member of **STATLER CLEVELAND, LLC**, an Ohio limited liability company and the sole Member of **STATLER CLEVELAND HOLDING, LLC,** a Delaware limited liability company, and that he as such Managing Member, being authorized to do so, executed the foregoing instrument for the purposes therein contained, by signing the name of such entity by himself as such Managing Member.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal in the County and State aforesaid, the day and year first above written. No oath or affirmation was administered to the signer with regard to the notarial act.



JANE LUDWIG
Notary Public
State of Ohio
My Comm. Expires
October 25, 2025

_____
Notary Public

MY COMMISSION EXPIRES: October 25, 2025

**EXHIBIT "A"**
**LEGAL DESCRIPTION**

Property 1:
Parcel No. 1: (Fee Simple)

Situated in the City of Cleveland, County of Cuyahoga and State of Ohio:

And known as being part of Sublot Nos. 62 and 63 in John M. Woolsey's Subdivision of part of Original Two Acre Lot Nos. 156, 157 and 158, as shown by the recorded plat in Volume "N" of Deeds, Page 486 of Cuyahoga County Records, bounded and described as follows:

Beginning on the northerly line of Euclid Avenue (99.00 feet wide) at its intersection with the westerly line of East 12th Street (formerly Muirson Street) (60.40 feet wide);

Thence South 79° 35' 51" west along said northerly line of Euclid Avenue 168.82 feet to the southeasterly corner of land conveyed to the Trebmal Construction Co. by deed recorded in Volume 83-0853, Page 17 of Cuyahoga County Records;

Thence North 10° 35' 39" west along the easterly line of land so conveyed to the Trebmal Construction Co. and the northerly prolongation thereof, 150.00 feet to a point;

Thence North 79° 35' 42" east 64.80 feet to a point on the westerly line of land conveyed to The Cleveland Trust Company by deed dated May 31, 1927 and recorded in Volume 3567, Page 349 of Cuyahoga County Records;

Thence North 10° 36' 09" west along said line, 169.58 feet to a point in the southeasterly line of Hickory Court, N.E. (15.12 feet wide);

Thence North 55° 48' 21" east along the southeasterly line of Hickory Court, N.E., 113.48 feet to a point in the westerly line of aforementioned East 12th Street;

Thence South 10° 36' 09" east along the westerly line of said East 12th Street, 365.36 feet to the point of beginning and containing 1.0408 acres of land as calculated and described by The North Coast Engineering and Surveying Co., Inc., in November of 1998, be the same more or less, but subject to all legal highways.

NOTE: The above premises is further known as the Apartment Parcel in the Plat of Consolidation of Statler Arms, Inc. as shown by the recorded plat in Volume 301 of Maps, Page 78 of Cuyahoga County Records.

Parcel No. 2: Appurtenant Rights

A.      Together with a nonexclusive perpetual easement for the use of the elevator and stairwell in the garage; a nonexclusive perpetual easement for access to and the use of all underground facilities serving the building located on the apartment parcel including without limitation all utility lines, pipes, ducts, equipment and facilities located on, under or over the garage parcel; a nonexclusive perpetual easement for the use of the access and service drive which extends from Hickory Court through the rear portion of the garage; a nonexclusive and perpetual easement to perform all necessary maintenance to the apartment building wall and to make penetrations into and through the garage wall for the purpose of allowing direct access from the apartment building to each floor of the garage and a nonexclusive perpetual easement to the use of the air rights above the top level of the garage for the purpose of maintaining and repairing the portions of the wall of the apartment building which extend above the top level of the garage all as reserved in the Warranty Deed from Statler Arms, Inc., an Ohio corporation to Statler Arms Garage, Inc., an Ohio corporation, dated April 27, 1999, filed for record September 21, 1999, and being Cuyahoga County Recorder's AFN 199909210866.

B.      Together with a License Agreement for Use of Ballroom by and between Statler Arms Garage, Inc., an Ohio corporation ("Original Licensor"), and Statler Arms, Inc., an Ohio corporation ("Original Licensee"), dated August 13, 1999, filed for record September 21, 1999, and being Cuyahoga County Recorder's AFN 199909210869;  as assigned by Original Licensee to PAMI Statler Arms, LLC, a Delaware limited liability company ("PAMI"), by Assignment and Assumption of License Agreements, dated May 8, 2006, filed for record May 10, 2006, and being Cuyahoga County Recorder's AFN 200605100708; as modified by Amendment of License Agreement and Stipulation Settlement, dated September 23, 2008, filed for record June 3, 2011 as Instrument No. 201106030167 of Cuyahoga County, Ohio records; as assigned by PAMI to Statler Arms L/CAL LLC, a Delaware limited liability company ("L/CAL"), by unrecorded Assignment and Assumption of License Agreements, dated May 23, 2012; as consented to by HH Cleveland Statler L.P., an Ohio limited partnership ("Licensor"), successor in interest to Original Licensor, by Consent to Assignment and Assumption of License Agreements, dated December 16, 2016, filed for record December 28, 2016 as Instrument No. 201612280380 of Cuyahoga County, Ohio records; as consented to by Licensor, by unrecorded Consent to Assignment and Assumption of License Agreements, dated November 29, 2017; as assigned by L/CAL to Statler Cleveland Holding, LLC, a Delaware limited liability company ("Licensee"), by Assignment and Assumption of License Agreements dated January 30, 2018 and filed in Cuyahoga County, Ohio records as Instrument No. 201801300501.

C.      Together with a License Agreement for Use of Parking Spaces in Garage by and between Statler Arms Garage, Inc., an Ohio corporation ("Original Licensor"), and Statler Arms, Inc., an Ohio corporation ("Original Licensee"), dated August 13, 1999, filed for record September 21,

1999, and being Cuyahoga County Recorder's AFN 199909210870, as assigned by Original Licensee to PAMI Statler Arms, LLC, a Delaware limited liability company ("PAMI"), by Assignment and Assumption of License Agreements, dated May 8, 2006, filed for record May 10, 2006, and being Cuyahoga County Recorder's AFN 200605100708; as modified by Amendment of License Agreement and Stipulation Settlement, dated September 23, 2008, filed for record June 3, 2011 as Instrument No. 201106030167 of Cuyahoga County, Ohio records; as assigned by PAMI to Statler Arms L/CAL LLC, a Delaware limited liability company ("L/CAL"), by unrecorded Assignment and Assumption of License Agreements, dated May 23, 2012; as consented to by HH Cleveland Statler L.P., an Ohio limited partnership ("Licensor"), successor in interest to Original Licensor, by Consent to Assignment and Assumption of License Agreements, dated December 16, 2016, filed for record December 28, 2016 as Instrument No. 201612280380 of Cuyahoga County, Ohio records; as consented to by Licensor, by unrecorded Consent to Assignment and Assumption of License Agreements, dated November 29, 2017; as assigned by L/CAL to Statler Cleveland Holding, LLC, a Delaware limited liability company ("Licensee"), by Assignment and Assumption of License Agreements dated January 30, 2018 and filed in Cuyahoga County, Ohio records as Instrument No. 201801300501.

D.    Together with the right to construct a hoist as set forth in City of Cleveland Ordinance No. 107802.